ADOLPH A. PINET v. CHARLES MONTAGUE AND LEWIS
VAN WINKLE.

*Contract of employment—Discharge of employé—Evidence—Damages—Practice in circuit court.*

1. Where, during the argument of a case to the jury, exception is taken by the opposing counsel to a statement that there is evidence of a certain fact, it is proper for the attorney, in defense of his position, to challenge the attention of the court to the particular evidence which he claims he referred to in his argument.

2. In a suit by a lumber inspector to recover damages alleged to have been sustained by reason of being wrongfully prevented from performing his contract for measuring and inspecting a season's cut of lumber for the defendant, the plaintiff was allowed to recover for the amount of lumber sawed during the season at the agreed price for measurement and inspection, less what he had received pay for, and less the sum of $200, which he testified it would have cost him to inspect the rest of the lumber. Objection was made that this was not the proper measure of damages, for the reason that the plaintiff's personal presence would have been required for the remainder of the season, and that he was shown to have done other work, which should be considered in reduction of damages. The amount of plaintiff's earnings was not shown, nor did it appear that he received any pay for work performed during the remainder of the season. And it is held that the burden was upon the defendant to show said facts; citing *Farrell v. School-District*, 98 Mich. 47.

3. A lumber inspector contracted to measure and inspect a season's cut of lumber at an agreed price per thousand feet. After entering upon the performance of his contract, he asked for leave of absence for a few days, and offered to have his brother take his place. His request was granted, with the understanding that he should be telegraphed for when wanted, and he was paid for the services already performed. The contractees, owing, as they claimed, to the dissatisfaction of one of their customers with the inspector's measurements, desired to terminate the contract, and to that end negotiated with the inspector by letter, and in one letter stated that they thought the inspector had better call his man (who had meas-

ured some of the lumber) home, and quit. The inspector, in reply, sent a formal offer of compromise, after which he offered by letter to perform the contract, and threatened suit if not permitted to do so, to which the contractees replied that they had done the best they could for the inspector, and intimated that he could bring the threatened suit if he thought best to do so. And it is held:

*a*—That the desire on the part of the contractees, as evidenced by their letters, to terminate the contract, coupled with the negotiations with the contractor to that end, did not amount to an infringement of his rights under his contract.

*b*—That the statement by the contractees in their letter that the contractor had better call his man home, and quit, was not equivalent to a refusal on their part to carry out the contract, but that it justified the contractor in writing the letter tendering his services in performance of the contract, and that, as said offer terminated the negotiations, the jury might consistently find, from the time of its reception, a refusal by the contractees to perform the contract.

Error to Saginaw. (Wilber, J.) Argued November 21 and 22, 1894. Decided January 4, 1895.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Humphrey & Grant,* for appellants.

*Weadock & Purcell,* for plaintiff.

HOOKER, J. The parties to this action made the following written contract:

"VAN'S HARBOR, MICH., January 27, 1891.
"Articles of agreement made this day between Van Winkle & Montague and A. A. Pinet, as follows: A. A. Pinet will measure and inspect all the lumber manufactured by Van Winkle & Montague in the summer or year of 1891 for 12½ cents per M. feet. The greater part of said lumber to be straight measure. Pinet to measure the lumber so as to detain vessels as little as possible. Van Winkle & Montague to pay above price, and pile the lumber so as to make the measuring as convenient as possible.
            "VAN WINKLE & MONTAGUE.
            "A. A. PINET."

Pinet brought the action, alleging a breach of the contract by the defendants, in preventing him from measuring the lumber. A question arose upon the construction of the contract, defendants contending that it required the personal services of the plaintiff, and the court instructed the jury that it required his personal supervision. On August 6 the plaintiff left, and never returned. The parties do not agree about the circumstances under which he went, the plaintiff stating that he asked for a leave of absence for a few days to go to Saginaw, saying that he would have his brother take his place, when defendant Van Winkle replied:

"You needn't go to that expense. I must either lose you or Hilte [a customer of defendants', who was dissatisfied with plaintiff's measurement], and I cannot afford to lose Hilte, for he advances me money, from $3,000 to $5,000, when I don't ask it; and these hard times it is better not to lose him, and, rather than lose him, you may go to Saginaw, and I will telegraph you when I want you, and let George Robinson [an employé of plaintiff] measure what he can, and, in case you don't get back in time, I will let the balance of the lumber be measured at Milwaukee."

The defendants assert that, according to plaintiff's theory of the case, he said that he was going for four or five days, and the arrangement was that, if he was wanted *within that time,* he should be written or telegraphed for.

Van Winkle testified that he only consented to plaintiff's going conditionally, and that he must be back before the boats returned, and that he was not back. This was the first time he went. Witness continued:

"The next time he went away was August 6. · I didn't consent to his going. He said he was going to Saginaw, but didn't say when he was coming back. I made no arrangements with Pinet to telegraph him when I wanted him."

On cross-examination he said:

" When Pinet first began to talk about leaving, in August, he stated that he could get his brother Fred to come up and take his place temporarily, and that Fred was a competent inspector, or something like that. I said I didn't think it was necessary; that I would wait until he returned, or something like that. I am positive that I did not say anything about telegraphing him when he was required back. I expected him to return August 6, when he went away, with a competent man to measure this lumber. * * * I only consented to his going away until the Wyman [a boat] came back. I expected her in three or four days. I didn't expect him back in time to load her for the next trip. At the time Pinet went away, I preferred him to measure the lumber to any other man."

According to the testimony of both parties, the defendants did not discharge the plaintiff, or refuse to permit him to perform the contract, on August 6. According to the plaintiff's testimony, he requested permission to go, and was informed that, in view of Hilte's dissatisfaction, he might go, and that he would be telegraphed for when wanted. Robinson remained on the ground, and measured some lumber, being still in the plaintiff's employ. All agree that the plaintiff was paid up to the time he left, and that he was never asked to return, by letter or otherwise. We think that the testimony shows that the plaintiff was merely granted a leave of absence at that time. We must therefore look upon his absence as a matter of mutual assent, and conclude that he would not be entitled to claim damages unless something further occurred amounting to a breach of the contract by the defendants.

This brings us to the correspondence. It began by a letter dated August 6, the day that the plaintiff left. One of the defendants testified that he thought it was written after he left. At all events, it was not seen by the plaintiff until it reached him, by due course of mail, in Saginaw. It therefore did not affect their agreement of August 6. It may be thought to show a reason for the

defendants' consent, and may have influenced the jury in deciding whose version of the transaction of August 6 to believe, but it cannot be said to have changed or affected the arrangement actually made. This letter of August 6 mentions Hilte's dissatisfaction; states that the defendants could not afford to drop Hilte just then; and adds: "So, if you feel like it, drop the job where it is;" and, again: "Maybe the best thing for you and I both is for you to quit the job. Let me hear from you." The plaintiff wrote a letter dated August 11 in answer to that of August 6. He said, in substance, that he would throw up the job if he could afford to. He proposed to measure all but the Hilte lumber, and keep Robinson there, defendants to allow him something for the lumber that should go to Hilte. The defendants replied upon August 13, complaining of bad measurements, and stating that it nearly all occurred by plaintiff's leaving his men and going away, and concluded by saying, "I think now you better call your man home, and quit." On August 17 the plaintiff answered, denying that the defendants had a right to find fault, and stating that he was willing to fill his contract to the letter, but offering to throw up the contract upon a compromise therein suggested. On August 19 the defendants replied, saying that Robinson was there, but not measuring anything; that he had been sick for a few days; that they would not ship any more lumber without measuring; and that they had written for a man to come and measure a load or two. If this letter was answered, it was not shown; and on September 5 the plaintiff wrote to the defendants, to tender his performance of the contract, and threatening suit if he should not be permitted to do so. On September 10 the defendants wrote, saying that they had done the best they could for the plaintiff, and intimating that he could bring the threatened suit if he thought best. The action was then brought.

The court permitted the jury to determine that the defendants violated the contract, and of this counsel for the defendants complain, their brief stating:

" The main question is as to whether or not Pinet can recover what he claims would have been his profits in measuring all of the balance of the lumber manufactured at Van's Harbor by staying in Saginaw, and simply writing a letter to the defendants, notifying them that he was ready and willing to perform his contract to the letter, but doing nothing himself in the way of performance, except writing the letter."

We are of the opinion that the letters show that the defendants desired to terminate the contract, and that they negotiated with the plaintiff to that end. Such desire and negotiation was not an infringement of the plaintiff's rights, however. Nothing shows that he was prohibited from returning to his work had he chosen to do so, or that the defendants would have prevented his measuring the lumber, or refused to pay him for his work. The plaintiff's counsel lay great stress upon the expression used in the letter of August 13, " I think now you better call your man home, and quit," claiming that this was equivalent to a refusal to carry out the agreement. It was not in our view of the correspondence, and it does not seem to have been so treated by the plaintiff, for he afterwards sent a formal proposition for compromise, and subsequently a tender of his services. We think that this was prudent, and that he could not have relied upon that expression as a breach of the contract, but we also think it justified him in writing the letter wherein he tendered his services, and expecting a reply, and that all the correspondence and circumstances, if the plaintiff's version was believed, justified the jury in finding a refusal on the part of the defendants to permit the plaintiff to measure more lumber, without requiring him to make a trip of 300 or 400 miles to make the offer, when the defendants had (according to

his version) promised to let him know when they wanted him, and had expressly said they would like to have him quit. His offer terminated the negotiations, and, from the time of its reception, the jury might consistently find a refusal by the defendants to perform their undertaking. The circuit judge instructed the jury that they might ascertain the defendants' intention in writing to the plaintiff that he had better quit the job, and that if they should find that they intended it as a discharge, and that the plaintiff had a right so to consider it, then they might consider that he was discharged thereby; and it is apparent that they did so find. We have already intimated that the letter was not susceptible of that construction, but the verdict shows that the jury must have believed the plaintiff's version of the matter; and, if so, it follows that what occurred after the letter of August 13 (all of which is in writing) did amount to a discharge of the plaintiff, and the jury must necessarily have so found had they reached that question. It is unimportant, therefore, that they base their verdict on a discharge at that particular time, instead of later, unless it appears that the defendants were injured thereby.

This brings us to the question of damages. The plaintiff was allowed to recover for the amount of lumber sawed during the season at the agreed price, less what he had received pay for, and less the sum of $200, which he testified it would have cost him to inspect the lumber; *i. e.,* that he could have done it himself at that cost. Counsel for the defendants raise the question that this was not the proper measure of damages, for the reason that the plaintiff's personal presence would have been required for the rest of the season, and that he was shown to have done other work, which should have been considered in reduction of the damages. Undoubtedly, this is the true rule, but we find no evidence that he earned anything, except

as it may be inferred from the testimony of the plaintiff, who said he measured two or three boat loads of lumber at Baraga, at least one of which was for his brother. It does not appear that he received any pay for work, or could have done so; and counsel for defendants do not seem to have cared to examine him in relation to the subject. Defendants' tenth request shows that the amount of his earnings was not shown. The burden was upon the defendants to show the fact. *Farrell v. School-District*, 98 Mich. 47.

The following occurred upon argument to the jury:

"*Mr. Humphrey:* I take exception to the statement of Mr. Weadock that there is evidence that he gave him notice to quit.

"*Mr. Weadock:* We want to show now that the letter of August 13, in letter and in fact, tells Mr. Pinet he must quit his job. Mr. Pinet was ready and willing to do this work.

"*Mr. Humphrey:* I take exception to that remark, as there is no evidence in this case. The evidence shows that Mr. Pinet, a part of the time, was at work in Baraga, and could not have been there, and we don't know how much of the time."

Upon this, error is assigned as follows:

"The court erred in permitting plaintiff's counsel to argue to the jury that the plaintiff was discharged from his employment by the letter of August 13, introduced in evidence in this case."

The record does not show that he had so argued to the jury, unless it is to be inferred from the foregoing statement to the court, which was proper for him to make in defense of his position. The ruling of the court upon it, if there was one, is not given.

Other exceptions were taken to the claims of counsel made in argument, but we cannot say that counsel's arguments must strictly accord with his client's rights.

We find nothing in these points that would justify a reversal of the judgment, which will therefore be affirmed.

McGRATH, C. J., LONG and GRANT, JJ., concurred with HOOKER, J.

MONTGOMERY, J. The facts are sufficiently stated in the opinion of Mr. Justice HOOKER. I concur in the opinion that there was evidence showing a discharge of the plaintiff.

Complaint is made of the instructions relative to the measure of damages. The circuit judge charged the jury that the plaintiff was entitled to recover the contract price for scaling the balance of the lumber unscaled, less what it would cost him to do the work. It appeared by defendants' own testimony that there were 18,125,507 feet manufactured. Of this 8,000,000 feet were scaled prior to the discharge, leaving 10,125,507 feet. But there was testimony tending to show that while plaintiff was absent, with the consent of the defendants, the man left in charge was taken sick, and unable to scale, so that two cargoes were scaled by other parties, amounting to 500,000 feet, leaving 9,625,507 feet. This, at the contract price, would have amounted to $1,203.19, as the amount of compensation. But the verdict of the jury, exclusive of interest, was $765, or $238.19 less than the undisputed testimony showed the plaintiff entitled to recover, unless some allowance should be made for other earnings of the plaintiff. The defendants contend that the plaintiff's testimony showed that he secured other work during the time that he would have been required to give his attention to the work of the defendants if he had not been discharged. It is true his testimony shows that he measured two or three cargoes, but the defendants failed to show the amount of the lumber measured by him. But, if it be assumed that the cargoes were of the largest size of any shown by the testimony in this case to have been shipped, the price would amount to much less than the allowance which the jury evidently made on this account. There was no error to the prejudice of the defendants.