[Civ. No. 1514.   Third Appellate District.—July 14, 1916.]

## S. W. WINSOR, Respondent, v. SILICA BRICK COMPANY (a Corporation), Appellant.

ACTION FOR DAMAGES — BREACH OF CONTRACT OF EMPLOYMENT — DISCHARGE FROM SERVICE—PLEADING—INSUFFICIENT COMPLAINT.—In an action for the recovery of damages for the breach of a contract, wherein the plaintiff assigned to the defendant certain leases and contracts for the removal of earth and clay materials to be used in the manufacture of brick and other articles, and agreed to give his entire time and attention to the business of the defendant for a period of years, in consideration of the delivery to him of certain shares of the capital stock of the defendant and the agreement to employ him for the said period at a stated monthly salary, the complaint fails to state a cause of action for damages for the alleged violation of the terms of the contract in so far as the wrongful dismissal of the plaintiff by the defendant is alleged, where the only averment charging such dismissal is that the defendant refused "to perform the contract any longer or further or in whole or in part or to any extent," and still so refuses, and that the plaintiff has been prevented from performing the contract in any respect or at

all by reason of the "aforesaid refusal and continued refusal of said defendant."

ID.—DISCHARGE OF PLAINTIFF—INSUFFICIENCY OF EVIDENCE.—A letter written by the defendant to the plaintiff stating that the former "hereby releases you from any further services in its behalf. This will enable you to seek employment elsewhere," does not constitute a clear and unequivocal act of dismissal, and is not sufficient to support a finding of a discharge, when read in connection with the uncontradicted testimony of the secretary of the defendant as to a statement made by the plaintiff a few days before the receipt of the letter that he had an opportunity to obtain employment elsewhere if the defendant would release him from the contract.

ID.—PREVENTION OF PERFORMANCE — INSUFFICIENCY OF EVIDENCE.—In the absence of evidence of any affirmative act on the part of the plaintiff after the receipt of such letter showing a willingness upon his part to proceed with the contract, the allegation in such complaint that the defendant prevented the plaintiff from proceeding with the performance of the contract is not sustained.

APPEAL from an order of the Superior Court of Sacramento County denying a new trial. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, and C. L. Shinn, for Appellant.

Charles O. Busick, and O. G. Hopkins, for Respondent.

HART, J.—This action was brought by the plaintiff for the recovery of damages for the breach of a contract between him and the defendant.

A trial by jury was had, verdict for plaintiff in the sum of seven thousand three hundred dollars returned, and judgment entered in accordance therewith.

The defendant moved for a new trial. The court made an order denying the motion, and this appeal is from said order.

The contract, for the alleged breach of which the plaintiff seeks damages through this action, was made and entered into by and between the plaintiff and the defendant on the twenty-sixth day of July, 1910. It is set out in full in the complaint. It recites and covenants that the plaintiff, party of the first part, has agreed to assign and has assigned to the party of the second part, the defendant, all his right, title, etc., in and to certain leases and contracts for the removal of earth

and clay materials to be used in the manufacture of brick and other articles, "and has agreed to give his entire time and attention to the business of the party of the second part for a period of five years"; that in consideration therefor the defendant has given said plaintiff thirty thousand shares of its capital stock and agreed to employ the plaintiff for the term of five years at a monthly salary of two hundred dollars as a minimum, "and an additional amount equal to five per cent of the net profits of the party of the second part over and above the first twenty-eight thousand dollars of net profits each year." The plaintiff was not only to give his exclusive time and attention to the manufacture of brick and "such other articles as the defendant may elect" and in the performance of such service was to work at such place or places as the defendant might direct, putting in such service the best of his ability and knowledge in brick manufacture, but he was also to deliver to the defendant "all formulae known and used by him for the manufacture of such articles as the party of the second part may desire to manufacture, and that said formulae shall be entered upon the books of the party of the second part and shall become the property of the party of the second part during said five years." Besides some other provisions of the contract which it is not necessary specifically to refer to here, it is further agreed by the plaintiff that "during said five years he will not engage in any other business in the state of California, nor advise or assist in any manner any person or corporation that manufactures or sells articles similar to any articles manufactured by the party of the second part."

The complaint is in two counts—the one for damages for the alleged violation of the terms of the contract by the wrongful dismissal of the plaintiff by the defendant from its service, and the other for damages for the alleged failure of the defendant to pay to the plaintiff the five per cent on the net profits of the corporation over and above the first twenty-eight thousand dollars of the net profits of the concern, which profits, it is alleged, amounted in the aggregate for the year ending with the discharge of the defendant to the sum of eight thousand dollars, the total amount for which judgment is asked being the sum of seventeen thousand two hundred dollars. It may here be stated that no evidence was offered or received in support of the averments of the second count,

and the same may, therefore, be dismissed without further notice.

The complaint avers that, upon the making of the contract, the plaintiff entered upon the performance of the terms thereof so far as it related to him and "began the discharge of his duties thereunder and thereafter continued such performance and to discharge said duties" until on or about the twentieth day of September, 1911, when said defendant, without the consent and against the will of the plaintiff, "refused to perform said contract any longer or further in whole or in part, to any extent, or at all, and still so refuses; that this plaintiff was then and there and has ever since been and still is ready and willing to perform said contract fully and in all respects on his part and ever since said twentieth day of September, 1911, *he has been prevented from performing said contract in any respect or at all, by reason of the aforesaid refusal and continued refusal of the defendant.*"

The defendant filed an answer and a cross-complaint. In the former, in addition to making specific denials of the averments of the complaint, after admitting, however, the making of the contract referred to, it set up a special defense, alleging that, after the plaintiff entered upon the discharge of his duties under said contract, it was ascertained by the defendant that the plaintiff was surreptitiously receiving commissions from persons upon sales by such persons of machinery and other supplies to the defendant for its use in its business, and that the plaintiff had not accounted to the defendant for the commissions so received; that thereupon negotiations were had between the plaintiff and the defendant looking to the cancellation of said contract, which negotiations led to an agreement between the parties on or about the eighteenth day of September, 1911, canceling and annulling said contract in consideration of the payment by the defendant to the plaintiff of the sum of $125, the same to be in full satisfaction of all claims against said defendant; that of the sum so agreed to be paid the plaintiff, the defendant paid him the sum of $88.90.

The cross-complaint charges that, solely by and through willful and fraudulent misrepresentations relative to the value of the leases transferred to the corporation and to the ability and experience of the plaintiff as a manufacturer of brick and other articles made out of clay, the defendant was

induced to enter into the contract which is the basis of this action.

As there is no evidence in the record bearing upon the charges so made, further consideration thereof is not necessary.

Although, as stated, the case was tried by a jury, the court nevertheless made specific findings against the defendant and in favor of the plaintiff upon all the vital matters presented by the pleadings. These findings, in view of the submission of the issues of fact to a jury, were manifestly unnecessary.

We think the complaint fails to make out a case for damages for a breach of the contract upon the part of the defendant. It will be noted that in paragraph 4 of that pleading it is alleged that the defendant refused "to perform the contract any longer or further or in whole or in part or to any extent," and still so refuses, and that the plaintiff has been prevented from performing the contract in any respect or at all by reason of the "aforesaid refusal and continued refusal of said defendant." This is the only averment in the complaint which it may be claimed charges that the plaintiff was discharged, and it is clear that it falls far short of being a direct allegation that the plaintiff was discharged from the employment of the defendant. It is not inconceivable or even improbable that an employer might, for reasons sufficient to himself, be of the opinion that it would be better for him or his business to refuse to allow an employee, under a contract with him (the employer) for personal services, to continue his labors, and still expect and intend to remain faithful to his obligation to pay such employee his compensation, as called for by the contract, as it became due. The most that can be said of the complaint is that, since the twentieth day of September, 1911, the defendant had prevented the plaintiff from performing any work. This is not an averment that, at that time, or at any other time, the defendant discharged the plaintiff and refused any longer to be bound by its contract. It might perhaps be an averment that the corporation had refused to pay the plaintiff his monthly salary, but for this violation of the contract he would have an action for the salary due, and nothing else. He quite clearly cannot maintain an action for compensation unearned without a direct averment of discharge from employment.

The point thus considered, although necessarily raised by the demurrer, is not discussed or touched upon by counsel for the appellant in their briefs; and, while we believe it to be sufficient to warrant a reversal of the judgment, we shall for the reason that respondent was given no opportunity to answer or discuss the point, and for the further reason that, in our opinion, the judgment cannot justly be upheld upon a consideration of the record éven upon the assumption that the complaint does state a cause of action for a breach of the contract, further consider the record and the points to which the counsel for both sides solely address their attention and the discussion in their respective briefs.

Two points are made by the defendant against the legal stability of the verdict, viz.: 1. That the alleged discharge of the plaintiff from the service of the corporation, having been the act of the secretary of said corporation, and such act not appearing to have been authorized by the corporation itself, was the exercise of a power not within the scope of the authority of the secretary. It is hence argued that the attempted discharge was none at all either in law or in fact. 2. That the evidence does not support the implied finding of the jury that the secretary discharged the defendant.

We are of the opinion that the last stated point must be sustained, and it will not be necessary, therefore, to consider the point first above stated.

The plaintiff's version of the transaction which, he claims, resulted in his dismissal from the service of the corporation, is, in substance, as follows: That on the seventeenth day of September—about fourteen months after he entered upon the performance of his part of the contract pleaded in the complaint—he received the following letter, signed by J. P. Dargitz, secretary of the corporation, said letter being dated at Sacramento, September 16, 1911: "By request of the Board of Directors, you will please report at this office before returning to the plant."

In obedience to the request so made, the plaintiff called at the office of the corporation, in the Oschner Building, Sacramento, and there met Dargitz. What occurred between the plaintiff and Dargitz at that interview may best be told in the former's own language as a witness: "I saw Mr. Dargitz. I came in and addressed him as I usually did, 'How do you do?' and I was in very much need of some money, I never

had been paid up while I worked with them.   I told him I had
to have some money, my creditors were pressing me, I could
not get any more credit, and he shook his head, he said, 'We
have no money.'   He took out a bank-book, showed me a
check-book with a little red line on it, he claimed they had
overdrawn their account in a Sacramento bank where they
had deposited, where they had done their business, the Sacra-
mento Valley Trust Company, I believe.   He got up and
motioned me to go out in the anteroom, and I followed him
out there.   He closed the door, he says, 'Winsor,' he says,
'I am very sorry, but we have no money any more, and we
will have to let you go.'   And I says 'I am very sorry, I got
to get my money,—don't I get any money here?'   He says,
'We have not got it, but I can give—I will give you some
money, if you will release that contract.'   I said, 'Let's
see your money.'   He said, 'Well, I will have to get it from
Mr. Pierce; excuse me a moment.'   He opened the door, went
into the room, came out with a .typewritten sheet, and said,
'If you will sign that I will get the money from Mr. Pierce.'
I read the document over and it was an agreement that I was
to relinquish all claims and release the Silica Brick Company
for the sum of $125.   I told Mr. Dargitz that I could not
sign it.   He said, 'I can get that amount through the cour-
tesy of Mr. Pierce.'   I said, 'I will think it over,' and walked
out of the office and never went back.   I never had any con-
versation with him concerning the cancellation or surrender
of the contract at any time after that or before.''

A few days thereafter, the plaintiff received from Dargitz
the following letter, which was dated at Sacramento, Septem-
ber 20, 1911: ''As per your agreement with me, Monday, the
18th, I am now ready to hand you check and settle contract.
*The company hereby releases you from any further services
in its behalf.   This will enable you to seek employment else-
where.''*

The plaintiff further testified that at one time he was a
member of the defendant's board of directors; that he had
received from the corporation thirty thousand shares of its
capital stock; that the plant was ''shut down'' for a while
during the course of his directorship, but resumed operations
thereafter; that again it stopped operations, and at this time
he was no longer a director; that when it ''shut down'' on
the last occasion it seemed to him ''that the plant was not

going to reopen again.'' He testified: ''I have been willing and ready at all times since the execution of this contract to comply with the terms of the contract.''

The plaintiff himself was the only witness who gave testimony in his own behalf, and the foregoing constitutes a fair *résumé* of the only testimony offered and received upon the question of his alleged discharge by the defendant.

As explanatory of the language of the letter last above presented herein, Dargitz testified that, in the conversation referred to by the plaintiff in his testimony, the important part of which is given above, the plaintiff said to the witness that he ''was very anxious to know what was going to be done out there'' (referring to the plant); that he (plaintiff) ''had been laboring under uncertainties so long that he wanted to have some definite idea what was going to be done, and he wanted me to tell him what condition the company was in, and whether the thing was going ahead. I told him that it was very doubtful, that the company never had been financed and was not financed then and heavily indebted. *He said that he had an opportunity to get a good position with N. Clark & Sons in Alameda,* and if this thing was not going to go pretty quick, that he wanted to take advantage of that position, and that he would like to quit if this was still uncertain. I replied that my candid and confidential advice to him would be to accept that position, as this was still very uncertain; and he wanted to know *if the company would release him,* and I said I thought they would.''

The testimony so given by Dargitz was not in any manner or degree contradicted by the plaintiff, although he was recalled to the witness-stand in rebuttal after Dargitz gave said testimony.

It is very apparent that the letter addressed by Dargitz to the plaintiff under date of September 20, 1911, is not so phrased as to constitute it a clear and an unequivocal act of dismissal. Upon its face it is capable of the construction that by it the defendant did not intend peremptorily to discharge the plaintiff, but intended it to mean simply this: that the company was willing to release the plaintiff from his obligations under the contract, and so afford him an opportunity to secure employment elsewhere, it being left to the plaintiff to elect whether he would or would not accept the release. This, we say, is a meaning which may reasonably be attached to the

letter when construed according to its face or without reference to matters extrinsic thereto. But, when construed by the light of the testimony of Dargitz and even that of the plaintiff himself, it becomes absolutely certain that the meaning and intent of the letter is as it is so given. The latter testified, it will be remembered, that, after Dargitz proposed to him that the company would pay him the sum of $125 in consideration of the cancellation of the contract, he finally replied: "I will think it over," and thereupon he left the company's office and did not return. This reply, together with the fact, to which the plaintiff himself testified, that the plant was closed down and "seemed that it was not going to reopen again," was reasonably sufficient to justify Dargitz in at least believing that the proposition so made was not or would not be wholly unsatisfactory to the plaintiff, and that one of the objects which the latter was then seeking to accomplish was to secure release from the obligations of the contract.

If, however, there still remains some reason for doubting what the true intention of the company was in addressing said letter to the plaintiff, then a consideration of the testimony of Dargitz (and there is no substantial reason why in this connection that portion of his testimony explaining the language and the purpose of the letter should not be considered, since it was not contradicted), will well-nigh conclusively show that the letter was not intended as a peremptory dismissal of the plaintiff from the service of the company, but merely to release him from the burdens of the contract so that he might be given free and full opportunity to seek and accept other employment. Dargitz testified, as we have shown, that, in the conversation with the plaintiff on the 18th of September, or three or four days prior to the receipt of the letter in question by the plaintiff, the latter declared that he then had an opportunity to obtain employment with a firm in Alameda and asked Dargitz if he (the latter) thought the company would release him (plaintiff) from the contract, and that Dargitz replied that he thought it would. Thus it is very clear that Dargitz had reason to say to the plaintiff that he was released from his contract with the company without being actuated by any motive or intention of discharging the plaintiff and so abandoning the contract. That Dargitz, when writing the letter, had in mind

the previous conversation with the plaintiff regarding the question whether the company would be willing to release the latter from the obligations of the contract, is plainly evidenced by the suggestion in said letter—"This will enable you to seek employment elsewhere."

In considering Dargitz' testimony for the purpose of ascertaining the intent and scope of the letter, we have not been unmindful of the rule that it must be assumed, as a general proposition, that the evidence introduced by the vanquished party in opposition to that upon which the verdict has been founded was, for sufficient reasons, repudiated or disregarded by the jury. In this instance, however, there are several considerations which will justify an appellate court in taking into account, in passing upon the question whether the jury were warranted in reaching the verdict returned, the testimony of the party by whom the issue has been lost. First among these is the fact, as before suggested, that the testimony of Dargitz or the verity thereof was not directly or expressly contradicted by the plaintiff. The second is that the testimony of Dargitz has every appearance of being probable, since it explains why he uses in the letter language indicating that the company was willing to *release* the plaintiff from and not itself abandon the contract or peremptorily discharge the plaintiff, regardless of its obligation to give him employment for the full term of five years at the stipulated salary. As seen, Dargitz, in explaining why he addressed the letter to the plaintiff in the language in which it was phrased, testified that the latter in effect stated to him in the conversation previously had between them that he could secure employment with N. Clark & Sons of Alameda, if the company would release him from any further obligation of proceeding with the performance of the contract on his part. The fact that Dargitz, in his testimony, named the firm by which the plaintiff declared to him that he had an opportunity to be employed is significant, inasmuch as the plaintiff, having been recalled to the witness-stand after the defendant had rested its case, had absolutely nothing to say about N. Clark & Sons, not denying that he referred to said firm in his conversation with Dargitz, a denial which undoubtedly he would not have neglected to make had the fact been a mere figment of the latter's mind or without foundation.

But, whatever might have been the intent and purpose of the letter, it must readily be apparent upon a reading of the letter that it was so vague and uncertain in that regard as not to have justified the plaintiff, without making further investigation to ascertain its real import, in treating it as an unconditional and peremptory dismissal.

While the complaint alleges that the plaintiff was willing and ready to perform the contract in all respects, but that he was *prevented from so doing* by the acts and conduct of the defendant, there is absolutely no testimony in the record that he presented himself to the defendant and offered to perform his part of the contract after the receipt of the letter of September 20, 1911. On the contrary, he himself testified that he never had any conversation with Dargitz, "concerning the cancellation or surrender of the contract at any time" after the conversation which was had just previously to the receipt of said letter. Nor is there any testimony, other than whatever in that direction may be extracted from the letter itself, that the defendant prevented the plaintiff from proceeding with the execution of the terms of the contract on his part. It is true that he testified, as he pleaded, that he was ready and willing at all times to carry out his part of the agreement, but we think that he ought to have shown that he unequivocally manifested to the defendant such readiness and willingness. In other words, we think that, since the letter announcing his release from the contract did not involve a clear and an unequivocal act of dismissal, he should have shown that by some affirmative act on his part that he manifested to the company that he did not acquiesce in the proposition contained in the letter and did not desire to be released from the contract. This he could have done by presenting himself to the defendant as ready and willing to proceed with the performance of the contract. (*Olmstead* v. *Bach,* 78 Md. 132, [44 Am. St. Rep. 273, 275, 22 L. R. A. 74, 27 Atl. 501].) Of course, if, after so presenting himself and offering to go on with his work, the plaintiff had been prevented by the defendant from proceeding, with an intention in the latter not to pay him the stipulated salary, he then would have been entitled to bring his action for a breach of the contract, as it would be a useless and futile act to continue so to present himself and offer to proceed with the performance of the contract after the defendant had positively refused to permit

him to do so. (*De Camp* v. *Hewitt,* 11 Rob. (La.) 290, [43 Am. Dec. 204].) Or, if the act of the defendant had constituted a clear, unequivocal, and unconditional and peremptory discharge of the plaintiff, then, perhaps, the latter need not have presented himself and offered to continue with the performance of the contract, such dismissal being itself a sufficient prevention of the performance of the contract by the defendant.

Our conclusion is, however, that, under the peculiar circumstances of this case, the plaintiff did not do all that was required of him to entitle him to institute and maintain an action for his compensation under the terms of the contract for the whole of the unexpired term thereof. Indeed, assuming that the complaint states a cause of action, we believe that the plaintiff has failed to sustain the allegations thereof, inasmuch as there is no substantial evidence, either express or constructive, or, to state it in the strict language of the law of evidence, either direct or inferential, to support the averment that the defendant *prevented* the plaintiff from proceeding with the performance of the contract on his part.

It is hardly necessary to suggest that, in the consideration of the points upon which we feel impelled to reverse the case, we have assumed without deciding that the secretary of the corporation, Dargitz, was duly vested with authority to discharge the plaintiff.

The order appealed from is reversed.

Chipman, P. J., and Ellison, J., *pro tem.,* concurred.