[L. A. No. 5214. Department One.—December 5, 1919.]

GEORGE H. PERCIVAL, Respondent, v. NATIONAL DRAMA CORPORATION (a Corporation), Appellant.

[1] PERSONAL SERVICES—WRITTEN CONTRACT—ABSENCE OF PROOF OF DISCHARGE—EXTENT OF RECOVERY.—In an action for personal services rendered under a written contract of employment, in the absence of proof of a discharge and that it was wrongful, the plaintiff is entitled to recover only the amount of salary due him at the time the action was brought instead of his full salary for the entire term.

[2] MASTER AND SERVANT—DISCHARGE OF EMPLOYEE OF CORPORATION—CUSTODIAN OF PROPERTY—INSUFFICIENT AUTHORITY.—One authorized by a corporation to serve as custodian of the corporation's property and to adjust disputes regarding the lease of its plant, had no authority, by reason of such authorization, either real or ostensible, to discharge a servant of the corporation under contract with it, or to make any admissions binding on the corporation as to its intentions on that subject, notwithstanding he paid the servant's salary.

[3] ID.—EVIDENCE—LETTER OF EMPLOYER—INSUFFICIENT PROOF OF DISCHARGE.—A letter from the officer of a corporation employer shown to an employee, at the request of the corporation, stating that several officers had resigned, and were receiving no salary, and that the corporation was not going to start up at all, but was going out of business, and had no further use for the employee, and offering him a certain amount if he would release the corporation from the contract of employment, and concluding with the statement that if the employee did not accept the offer, the corporation would pay him his salary as per contract, cannot be construed as any evidence of a discharge.

[4] Id.—Wrongful Discharge—Rights of Parties—Time of Determination.—In an action for wrongful discharge of an employee, the rights of the parties must be judged by the conditions existing at the time the action was begun.

[5] Id.—Discharge—Secret Intention.—A discharge cannot be effected by a secret, undisclosed intention on the part of the master, but it must be done by some word or act communicated to the servant.

[6] Id.—Words and Acts Showing Discharge.—No set form of words is necessary to a discharge, but any words or acts which show a clear intention on the part of the master to dispense with the servant's services, and which are equivalent to a declaration to the servant that his services will be no longer accepted, are sufficient.

[7] Id.—Nonpayment of Wages—Insufficient Discharge.—Mere failure to pay wages to the servant does not amount to a discharge.

[8] Id.—Effect of Nonpayment of Wages.—Failure or refusal to pay wages merely gives the servant the option of quitting his employment and the right to sue for the salary then due and unpaid, or of continuing in the service, with the corresponding right to require and enforce payment of the salary as it accrues.

[9] Id.—Failure to Require Performance of Services—Insufficient Proof of Discharge.—Mere failure of the master to require the performance of services by the servant unless accompanied by some affirmative act indicating a discharge, is not sufficient proof thereof.

[10] Id.—Closing Place of Business—Insufficient Proof of Discharge.—The mere closing up of the employer's place of business does not amount to the discharge of an employee, as there must be some affirmative act or declaration in addition, manifesting such discharge.

[11] Id.—Failure to Answer Servant's Telegram—Insufficient Proof of Discharge.—Failure to answer a delivered telegram asking for information as to whether a servant was discharged, cannot be construed as a discharge.

APPEAL from a judgment of the Superior Court of Los Angeles County. E. P. Shortall, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Andrew J. Copp, Jr., for Appellant.

G. C. De Garmo for Respondent.

SHAW, J.—The defendant appeals from the judgment. The complaint sets forth a cause of action based on a

written contract dated April 21, 1916, whereby the defendant engaged the plaintiff to render to it "such services as may be required of him" from April 21, 1916, to September 1, 1917. Plaintiff also agreed to give his exclusive services to the defendant and that he would not "render services at any other place or to any other firm in the United States or Canada from the date of this contract until it is closed, except under the management" of the defendant. It was also agreed that the defendant should have the right, if it so desired, to have the plaintiff work for other firms or corporations, but only in the capacity of art director. The nature of the services to be rendered to defendant was not described in the contract. Plaintiff's compensation was to be $50 per week until September 1, 1916, and thereafter $60 per week. It is alleged that the plaintiff entered into the service of the defendant and continued therein until September 30, 1916, and that the defendant, then, without cause or justification, wrongfully discharged the plaintiff and ever since has refused to permit plaintiff to perform services under the contract. Damages were demanded for the full balance unpaid that would have become due him under the contract up to the end of the term specified. The answer denied that the defendant had discharged the plaintiff. The court made findings to the effect that the defendant wrongfully discharged the plaintiff as alleged in the complaint and gave judgment for the full amount demanded. In support of the appeal the defendant contends that the finding that there was a discharge is not supported by the evidence.

Plaintiff's action was begun on October 20, 1916, less than three weeks after the alleged discharge and more than ten months before the expiration of the contract. [1] In the absence of proof of a discharge and that it was wrongful, plaintiff would be entitled to recover only the amount of salary due him at the time the action was brought instead of his full salary for the entire term. (*Winsor* v. *Silica Brick Co.*, 31 Cal. App. 89, [159 Pac. 877].)

The evidence shows that the defendant's business was the production of photoplays. At the time the present contract was made defendant was not actively engaged in production but expected to be engaged therein. In fact, it never did resume such production but went out of business. It was

a New York corporation. Its office was in New York City, but its producing plant was at Los Angeles, and it had an office at the plant, at which the principal officers were stationed during the time prior to the making of the contract when it was engaged in production. The contract was made in Los Angeles. Thomas Dixon, director-general of the defendant, was the only officer of the corporation who had authority to hire and discharge employees. Plaintiff's contract was signed in defendant's behalf by W. C. Burns, its treasurer, but he acted under specific instructions from Dixon, who had left Los Angeles for New York just before the contract was signed. About July 13, 1916, defendant rented its plant to the Fox Film Corporation and removed its officers and headquarters to New York, leaving at Los Angeles some of its property and retaining an office at the plant, which was occupied by Jordan Dixon, son of Thomas Dixon, who was left behind by defendant as custodian of the property and paymaster of the plaintiff and one or two other employees of defendant who remained at Los Angeles.

Plaintiff, up to this time, had taken an inventory of defendant's property, which occupied him for a part of the time for about two weeks, and was the only service defendant had required of him. After defendant removed to New York plaintiff was not called on to render any further services, but continued to report to defendant's office in Los Angeles for duty and was regularly paid his weekly salary by Jordan Dixon, up to and including September 30, 1916. No further payments were made. The last six or seven installments of salary paid to the plaintiff were advanced by Jordan Dixon out of his own funds. Said Dixon was notified by the defendant that after September 30, 1916, any further payments made by him on its account, without its authority, would be on his own responsibility, but this was not communicated to plaintiff.

For proof of a discharge plaintiff relies on testimony of certain conversations had with Jordan Dixon, on evidence of efforts of the defendant to obtain a rescission of the contract, of the defendant's failure to pay his salary, of its lease of its plant to the Fox Film Corporation, and of its failure to answer a certain telegram sent by the plaintiff.

When Jordan Dixon paid plaintiff his salary for September 30, 1916, he told plaintiff he had no more money.

Plaintiff then said: "Won't I get my money next week?" To which Jordan Dixon replied: "I don't think so, unless they answer some of my communications, and they have not been answering them." On October 7, 1916, another weekly payment of salary became due and it was not paid. Plaintiff then asked Jordan Dixon what the intentions of the defendant were about paying plaintiff any more salary, to which Dixon replied that he did not know, but thought they were of the worst. The plaintiff then said: "What will I do; will I sue for my money?" Dixon answered: "I guess you might as well." On or soon after September 30th, Dixon told the plaintiff, in response to the plaintiff's request for information whether he was to consider himself discharged, that he, Jordan Dixon, had no authority to pay the plaintiff or to dismiss him or anything else.

The evidence shows that this statement of Jordan Dixon as to his want of authority was correct, except, perhaps, as to the matter of payment. Defendant's pay-rolls and testimony of several of its officers show that authority to employ and discharge employees was vested in Thomas Dixon, director-general, and that Jordan Dixon's authority, such as he had, was conferred on him by Thomas Dixon. The latter testified that he authorized Jordan Dixon to serve as custodian of defendant's property, and as paymaster of its employees, but gave him no authority to employ or discharge anyone, and instructed him to report all matters of importance to New York for decision. The plaintiff's evidence on this point goes no further than to show that Jordan Dixon took charge of the adjustment of disputes regarding the lease, and had something to do with the exhibition of defendant's pictures when it was in Los Angeles, and that he paid plaintiff's salary until September 30, 1916. [2] The defendant did not, by directing or permitting Jordan Dixon to exercise these powers, confer upon him any authority, real or ostensible, to discharge the plaintiff, or to make any admissions binding on the defendant as to its intentions on that subject. In view of this lack of authority in Jordan Dixon, of which plaintiff was informed as aforesaid, the various statements made by said Dixon to plaintiff do not afford any support for the finding that the plaintiff was discharged. Furthermore, even if he had authority to discharge the plaintiff, his statements did not purport to amount to a

discharge. They were mere expressions of his views as to defendant's intention, given in response to plaintiff's inquiries, and not a declaration or consummation of that intention. The plaintiff's question as to suing for his money did not necessarily mean anything more than a suit for the salary then due, and the answer made to it, even if made with authority, would amount to nothing more than a refusal or neglect to pay what was due.

In regard to the matter of a release from the contract, the plaintiff testified that Burns, the defendant's treasurer, before he left for New York, which happened on July 13th, asked the plaintiff if he was going to hold the defendant to the contract and gave the plaintiff to understand that he would not relish the idea of paying plaintiff the salary. Late in September, Jordan Dixon showed plaintiff a letter from the defendant's New York office, which, after saying, "Show this to Mr. Percival," went on to state that several officers of the defendant had resigned and were receiving no salary, and that defendant was not going to start up at all, but was going out of business and had no further use for an art director; and then offered plaintiff two hundred dollars and his fare to New York if he would release defendant from the contract; concluding with the statement that if the plaintiff did not accept the offer the defendant would pay him his salary as per contract. Upon this, plaintiff told Jordan Dixon that he would accept his salary according to the contract. This was the last communication had from anyone authorized to speak for the defendant in the matter. These negotiations for a rescission, especially in view of the final conclusion just stated, cannot be construed as any evidence of a discharge. (*Pinet* v. *Montague*, 103 Mich. 521, [61 N. W, 876]; 1 Labatt on Master and Servant, 2d ed., p. 586.) **[3]** They tend to show that there was no discharge, for the letter unequivocally declared defendant's intention to comply with the contract, and the plaintiff accepted that proposition.

The nonpayment of salary shown does not amount to a discharge. It appears that when he brought this suit only two weekly installments thereof were due and unpaid, and that no statement of the reasons for such nonpayment, or of the intention of the defendant in that behalf, had been made to the plaintiff by anyone authorized to act for the

defendant. Thomas Dixon, general director, testified that before leaving Los Angeles he had ordered the suspension of plaintiff's salary because of failure to perform certain duties which he said had been assigned to the plaintiff, but further that "we have never dismissed him from our service, simply suspended payment of his salary because of the failure to perform duties assigned to him." Plaintiff denied that the duties mentioned had been assigned to him. The testimony of Thomas Dixon, therefore, amounts only to the statement that the defendant had suspended payment of plaintiff's salary but had not dismissed him from its service. He further stated that, owing to his neglect of duty aforesaid, he felt under no obligation to continue to pay the salary. This testimony is not sufficient to warrant the find-, ing that plaintiff was thereby discharged. Possibly a refusal to pay a servant's salary, if declared to the servant by the master, and based on an asserted reason that is false, would be sufficient evidence to justify an inference that there had been a discharge. But that question does not arise here. [4] The rights of the parties must be judged by the conditions existing at the time the action was begun. Neither Thomas Dixon's reasons for suspending the plaintiff's salary, nor his feeling that he was under no obligation to pay the plaintiff was communicated to the plaintiff, nor does it appear that the defendant took any action on account of these reasons or this feeling, except to suspend payment. [5] A discharge cannot be effected by a secret, undisclosed intention on the part of the master. It must be done by some word or act communicated to the servant. [6] "No set form of words is necessary; but any words or acts which show a clear intention on the part of the master to dispense with the servant's services, and which are equivalent to a declaration to the servant that his services will be no longer accepted, are sufficient." (26 Cyc. 987.) In this case nothing was communicated to the plaintiff beyond the bare fact that his salary for two weeks was unpaid. No authority is cited by plaintiff, and we have found none, that this fact alone amounts to a discharge. [7] On the contrary, the authorities declare that mere failure of the master to pay wages to the servant does not amount to a discharge. (1 Labatt on Master and Servant, 2d ed., p. 590; 20 Am. & Eng. Ency. of Law, 26; *Wheaton* v. *Higgins,* 90 N. Y. Supp.

1041; *Barnett* v. *Cohen*, 110 N. Y. Supp. 835.) **[8]** Such failure or refusal to pay merely gives the servant the option of quitting his employment and the right to sue for the salary then due and unpaid, or of continuing in the service, with the corresponding right to require and enforce payment of the salary as it accrues.

Even when the refusal to pay is accompanied by a refusal to permit the servant to perform the duties it has been held that no discharge was shown. (*Stone* v. *Bancroft*, 139 Cal. 83, [70 Pac. 1017, 72 Pac. 717]; *Stone* v. *Bancroft*, 112 Cal. 657, [44 Pac. 1069]; *Winsor* v. *Silica Brick Co.*, 31 Cal. App. 89, [159 Pac. 877].) The evidence here does not show that the defendant refused to permit the plaintiff to render any services. The most that can be said of it is that defendant did not require any services of plaintiff. **[9]** This fact, unless accompanied by some affirmative act indicating a discharge, is not sufficient proof thereof. (*Winsor* v. *Silica Brick Co.*, *supra*; *Berg* v. *Carroll*, 9 N. Y. Supp. 511.) Under the conditions of this contract it is entitled to no weight at all. The contract assigned no specific duties to plaintiff and bound him to render only such services as should be required of him. It imposed on the defendant no obligation to provide for the rendition of any service by the plaintiff. According to the plaintiff's testimony the defendant had nothing for him to do, either when the contract was made, or thereafter, except the trifling matter of making an inventory of its property, as above stated. The terms of the contract as a whole, and the attending circumstances, indicate that it was not expected that the plaintiff would be continuously engaged in service, and that his salary was to go on just the same.

Plaintiff lays some stress, in his argument, on the fact that defendant closed up its plant at Los Angeles and went out of business. But this occurred a long time before the alleged discharge. Defendant was practically out of business when the contract was made, and plaintiff undoubtedly entered into it knowing that defendant would have little, if anything, for him to do unless, and until, it should resume production. These circumstances show that the defendant had a motive for discharging the plaintiff; but proof of motive cannot take the place of substantive proof of the act which is to be accomplished. **[10]** The mere

closing up of the employer's place of business does not amount to the discharge of an employee. There must be some affirmative act or declaration in addition, manifesting such discharge. (*Webster* v. *Wade*, 19 Cal. 291, [79 Am. Dec. 218].)

On October 11, 1916, after defendant had defaulted in payment of one week's salary to plaintiff, he sent a telegram, addressed to the defendant in New York as follows:

"Oct. 11, 1916.

"National Drama Corporation,

"1480 Broadway, New York City.

"My salary due Saturday October 7th not paid. Jordan Dixon states nothing further to be paid me. Am I discharged and what are your intentions as to paying my wages now due and to become due. I am at your services. Wire fully. Saratoga Hotel Los Angeles.

"G. H. PERCIVAL."

This telegram was not prepaid by plaintiff, and when it reached the defendant's New York office the defendant learned from the telegraph company that it was a telegram signed by the plaintiff, and thereupon it declined to receive or pay for it, and returned it to the telegraph company unopened. The next day the plaintiff was notified of this refusal, and thereupon paid the charges on the telegram. He never received any answer to it. The defendant's witnesses denied that defendant had received the telegram or that it was read by the persons in the office. There is no evidence to the contrary, unless a redelivery of the telegram can be inferred from the plaintiff's payment of the charges. No evidence was given that it was the custom of the telegraph company to make a redelivery in such a case. It is not necessary to determine whether the court will take judicial notice of such custom so that the inference would arise that the ordinary course of business had been followed. (Code Civ. Proc., sec. 1963, subd. 20.)  **[11]**  Even if the telegram had been delivered and read, the mere failure of the defendant to answer could not be construed as a discharge of the plaintiff.

Plaintiff was asking for information as to whether he was discharged and, as he received no answer, he was left with no more information than he had before, but no further effect can be given to the defendant's silence on the subject.

No other evidence of the discharge is presented by the record and we are, therefore, of the opinion that the court erred in finding that the plaintiff was discharged. As a reversal is necessary for this reason, the other points presented regarding the insufficiency of the evidence need not be considered.

The judgment is reversed.

Olney, J., and Lawlor, J., concurred.