### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### CEMENT MASONS LOCAL NO. 555, Operative Plasterers and Cement Masons International Association, A F L, Respondents.

#### No. 14238.

United States Court of Appeals
Ninth Circuit.
June 30, 1955.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Norton J. Come, Robert J. Wiener, Frederick U. Reel, Myron S. Waks, Attys., N.L.R.B., Washington, D. C., for petitioner.

Green, Richardson, Green & Griswold, Donald S. Richardson, Portland, Or., for respondent.

Before STEPHENS, POPE, and FEE, Circuit Judges.

STEPHENS, Circuit Judge.

This is a petition by the National Labor Relations Board brought under Section 10(e)[1] of the National Labor Relations Act for the enforcement of the Board's order against respondent union (hereinafter referred to as "Union", "respondent", or "Local 555").

Respondent union is the Portland, Oregon, local of the Operative Plasterers and Cement Masons International Association AFL. Much of the employment of cement workers in the Portland area is conducted under respondent's auspices. Employers needing cement masons usually, through arrangement with respondent, hire the desired workers through the union hall. The actual assignment of union members to jobs is under the control and direction of respondent's business manager. It is his duty to correlate the available supply of qualified workers with the requests of the employers. While the union does not order any man to a job, the members must have clearance from the union before they can work.

The relations between the employers, the workers, and the union are governed by respondent's "working rules" which are in effect on all jobs to which workers are dispatched. In material part these rules provide that no union member may allow a non-union cement worker to assist him in any way; that members working more than 30 miles from Portland shall receive $5.00 additional per diem, that all jobs must have a foreman who shall be a paid-up union member, that all cement masons shall be hired and cleared to the jobs by the local and none of them shall report to the job without a union clearance slip and that the foreman shall have the power to requisition and discharge cement masons and shall be held responsible for the enforcement of the working rules. Copies of these rules are printed and distributed to all members and contractors who employ members.

Anderson-Westfall Company (the employer) is a Portland contracting firm which engages in the construction of commercial buildings throughout the Pacific Northwest. Materials used by them in construction are often shipped to the job from states other than that in which the job is situated. In the spring of 1951, Anderson-Westfall was engaged in the construction of a $150,000 research building for Crown Zellerbach Corporation at Comas, Washington, and a $225,000 retail food store for Safeway Stores at Salem, Oregon.[2] Early in June, construction on the Salem store had reached a stage where the services of cement workers were needed. Since Salem is outside the area normally serviced by respondent, Anderson-Westfall contacted the Salem local of the International Association and requested workers. The Salem local was unable at this time to supply workers and it was suggested by the Salem local that Anderson-Westfall secure Portland workers through respondent. Anderson-Westfall accordingly requested respondent to furnish the workers for the Salem job. This respondent agreed to do, but stated that under the working rules the workers must be paid the additional five dollars

---

1. Title 29 U.S.C.A. § 160, which reads in part:

"(e) The Board shall have power to petition any circuit court of appeals of the United States * * * or if all the United States courts of appeal to which application may be made are in vacation, any district court of the United States * * *, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary re-

lief or restraining order * * *." June 7, 1934, c. 426, 48 Stat. 926; July 5, 1935, c. 372, § 10, 49 Stat. 453; June 25, 1936, c. 804, 49 Stat. 1921; as amended June 23, 1947, 3:17 p.m., E.D. T., c. 120, Title I, § 101, 61 Stat. 146; June 25, 1948, c. 648, § 32, 62 Stat. 991, eff. Sept. 1, 1948.

2. The interstate character of employer's business is apparent from the above. The employer is within the Act. The jurisdiction of the Board is not questioned in this proceeding.

per diem for travel expenses due to the distance to the job.

On June 7, respondent's business agent announced the Salem job to the members. During the morning union member Parker called the hall and, on behalf of himself and some other members, requested to be assigned to the job. Parker's request was granted, he and his companions being listed for the Salem job. At a union meeting held on the night of June 7, respondent's business agent announced that Parker and another man were suspended from the union for reasons other than the nonpayment of dues, but that they should "not be denied the privilege to work whenever they find employment." The following morning Parker and five other cement workers drove to the Salem job. Upon their arrival Anderson-Westfall, in accordance with respondent's working rules, selected member Reichel[3] as foreman of the cement workers. Shortly thereafter three other cement masons arrived on the job, having been dispatched by respondent's business agent. Upon learning that Parker was on the job, the new arrivals informed foreman Reichel that they would not work with Parker. While the testimony is conflicting as to the basis of the refusal of the three men to work with Parker, the trial examiner and the Board have adopted the view that the refusal to work was founded upon Parker's suspension from the union and not upon personal reasons, as contended by respondent. This interpretation finds ample support in the record[4] and we are unable to say that it is clearly erroneous.[5]

Reichel did not formally discharge Parker but directed him to attempt to get a clearance from the Salem local in order that he might return to the job,[6] inasmuch as his termination left them one man short. Clearance was refused by the Salem business agent for the asserted reason that it could only be issued by the members of that local at a special meeting. Parker thereupon abandoned further efforts to gain acceptance and did no more work on the Salem job.

On the above facts, the Board found respondent had violated Section 8(b) (1) (A) and (2) of the Labor Management Relations Act of 1947,[7] by causing An-

---

3. Reichel testified that he had attended the meeting on June 7 but had left before the announcement of the business agent which purportedly took Parker out from under the effect of the working rules.

4. Reichel's testimony on this point was as follows:

"Q. Now what was the reason that these three individuals told you they would not work with Parker? A. He was no more a member of Local 555.

"Q. When had his membership been terminated? A. That evening of Thursday.

\* \* \* \* \* \*

"Q. What was it you said to him [Parker]? A. Why, I just explained it to him, what the conditions was that they refused to work with him, that he was no more a member of 555, that he ought to do something different because we needed the work done.

"Q. Did you tell him it would be necessary to leave the job then? A. No, I told him to go up to the business agent at Salem and get a clearance there; that way it wouldn't be interfering with our local."

5. United States v. United States Gypsum Corp., 1948, 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746; N.L.R.B. v. Universal Camera Corp., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. See, Id., 2 Cir., 190 F.2d 429.

6. As pointed out in petitioner's brief, Reichel's action in directing Parker to obtain clearance from the Salem local is incompatible with respondent's position that a personality conflict caused his discharge. If such were the case, Salem clearance could add nothing to clearance by respondent. Reichel's action is completely consonant with the contention urged by respondent that the discharge was caused for union nonmembership in violation of the Act.

7. Title 29 U.S.C.A. § 158(b) (1) (A) and (2) which provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents——

"(1) to restrain or coerce (A) employees in the exercise of the rights

derson-Westfall to discharge Parker by reason of his loss of union membership in violation of Section 8(a) (1) and (3) [8] of the Act.

Respondent's contention that there is no substantial evidence that Parker was refused a working permit is well taken. The complaint contains an allegation that respondent refused to issue a work permit to Parker for the Salem job. It is not apparent from the testimony that such was the case, while conversely it does appear that Parker was in fact dispatched by the union to the Salem job and that he worked for one and one-half hours on the day he was allegedly denied a permit to work.

As to Parker, the complaint was confined to the union's actions concerning him on the Salem job alone, and on this point it was charged that the cumulative behavior of the union toward him constituted an unfair labor practice. The basic violation charged was that the respondent by its actions wrongfully interfered with Parker's employment by Anderson-Westfall in violation of section 8(b) (1) (A) and (2) of the Act. It is immaterial whether the wrongful interference took the form of preventing his employment *ab initio* or of affecting his tenure on the job, once he was hired. Either course would violate the Act. It appears as respondent urges, that there was no refusal to issue a work permit. But even if the Board had found such a refusal [and it is in nowise clear that it did], such fact would not compel reversal. It would be mere harmless error affecting not the ultimate disposition because it yet leaves undisposed the question of respondent's interference with the tenure of Parker's employment.

In this respect the record contains ample substantiation for the position of the Board that respondent wrongfully caused Anderson-Westfall to discriminate against Parker because his union membership had been suspended for reasons other than nonpayment of dues.

Respondent next denies that foreman Reichel actually discharged Parker. The argument points out the absence of words indicating a formal discharge, but from the surrounding circumstances it is difficult to arrive at any other interpretation. The threat of three masons to leave the job if Parker did not, and Reichel's subsequent action in taking "him off the job" are consistent only with the theory that Parker was discharged. No set words are necessary to constitute a discharge; words or conduct, which would logically lead an employee to believe his tenure had been terminated, are in themselves sufficient.[9]

---

guaranteed in section 157 of this title: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * * ;

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; * * * ." July 5, 1935, c. 372, § 8, 49 Stat. 452; as amended June 23, 1947, 3:17 p.m., E.D.T., c. 120, Title I, § 101, 61 Stat. 140; Oct. 22, 1951, c. 534, § 1 (b), 65 Stat. 601.

8. Title 29 U.S.C.A. § 158(a) (1) and (2) which reads:

"(a) It shall be an unfair labor practice for an employer——

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

"(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it; *Provided,* That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay; * * * ."

9. Taylor v. Tulsa Tribune Co., 10 Cir., 1943, 136 F.2d 981, 983; Helfer v. Cor-

Respondent's main argument demands an examination of status of the position occupied by foreman Reichel. Respondent's contentions are threefold:

(a) Reichel had no authority from the employer to discharge Parker;

(b) Reichel had no authority from the union to cause Parker to be discharged; and

(c) No agency relation existed between the respondent union and Reichel, so as to charge the respondent for anything Reichel did on the Salem job.

The basis for this argument is respondent's contention of the inapplicability of respondent's "working rules" to any job located outside its jurisdictional area. The view taken is that the "working rules" apply only to jobs within local 555's area and do not apply in cases such as this where local 555 members work on a job located in another local union's territory, even with the permission and at the request of the other local. Upon this premise respondent contends that there is nothing authorizing a foreman to act in behalf of the union in any manner, nor is there any showing that in this case Reichel was employed pursuant to the rules or received any instruction from the employer regarding Parker's employment.

■ It may be observed that since Reichel was *de facto* employer's foreman at Salem it matters little whether his employment in that position was the result of the rules or of personal preference on the part of the employer. In either event, he acted as an arm of management and, having clothed him with ostensible authority, they were bound by his acts within the apparent scope of his authority.

■ As to the union, something more must be shown than mere membership in the union by Reichel and the other persons involved. The trial examiner and the Board found the "working rules" applicable to the Salem job and we are not disposed to say that their position is not supported by substantial evidence.[10] The "working rules" themselves are silent as to their applicability in cases such as the instant one.

However, employment of Portland local 555 members in Salem raised no jurisdictional dispute with the Salem local, rather it was at the suggestion of the business agent of the Salem local that the employer contacted respondent regarding workers. No arrangements were made to which the Salem local was a party whereby respondent's members would be hired through Salem and subject to its working rules. Instead, employer who traditionally hired its masons for Portland jobs through respondent, got in touch with respondent's business agent. From the inception of their relation, respondent insisted and Anderson-Westfall acquiesced in the applicability of the "working rules" on all jobs where respondent's members were employed.

Respondent urges that prior union interpretation of the International Constitution has uniformly denied the applicability of a local's working rules outside its territorial jurisdiction. However this may be, the conduct of all concerned clearly shows that the rules were assumed to be effective. Section 22 of the "working rules" provides:

> "Foremen shall have the power to requisition or discharge cement masons and shall be held responsible for the enforcement of the Working Rules."

ona Products, Inc., 8 Cir., 1942, 127 F.2d 612, 622; Percival v. National Drama Corp., 1919, 181 Cal. 631, 635, 185 P. 972, 974–975; Del Buona, Jr., v. Pennsylvania Labor Relations Board, 1952, 370 Pa. 645, 89 A.2d 323, 326; Neid v. Tassie's Bakery, Inc., 1945, 219 Minn. 272, 17 N.W.2d 357, 358; Allgood v. City of Oskaloosa, 1941, 231 Iowa

197, 1 N.W.2d 211, 212; Johnson v. Crookston Lumber Co., 1904, 92 Minn. 393, 100 N.W. 225.

10. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746; N.L.R.B. v. Universal Camera Co., 1951, 340 U.S. 474. 71 S.Ct. 456, 95 L.Ed. 456.

Reichel's action in discharging Parker was squarely within the general authority granted to him as foreman by the union's "working rules", and consequently was binding upon the union.[11]

The petition of the Board for enforcement of its order is granted.

11. United Mine Workers of America v. Patton, 4 Cir., 1954, 211 F.2d 742; N. L.R.B. v. Acme Mattress Co., 7 Cir., 1951, 192 F.2d 524.