[No. 6,603.—Department No. 2.]

PERKINS ET AL. v. ECKERT.

CONTRACT—AGREEMENT—INSTRUCTIONS.—In an action upon an account, the question was whether a bill of sale of a quantity of wheat, executed by the defendant to the plaintiffs, was an absolute sale in satisfaction of the debt, or was only by way of security; and the Court instructed the jury to the effect, that the bill of sale purporting to be an absolute sale, they should find it to be such, unless it appeared from a preponderance of evidence that it was given as security, *and that both parties so understood it.* *Held,* that the last clause of the instruction was erroneous.

INSTRUCTION.—An instruction is erroneous if there is no evidence tending to establish the hypothesis upon which it is based.

DELIVERY — CHATTEL MORTGAGE—LOSS OF MORTGAGED PROPERTY—INSTRUCTION.—By the terms of a chattel mortgage of wheat, the mortgagor was to harvest the same, and to deliver it into possession of the mortgagees; and, the question being as to who should bear the loss of a portion of the wheat, alleged to have been shipped by railroad to the place of destination agreed upon, but which did not arrive, the Court instructed the jury to the effect, that if the wheat referred to was shipped in the name of the plaintiffs, and the bills of sale taken in their name with their knowledge and consent, then they were in the possession and the owners thereof, and were liable for any loss resulting from their own negligence or carelessness, or that of their agents and employés. *Held,* that the proposition was not law, and that the instruction was erroneous.

APPEAL from a judgment for the defendants, and from an order denying a new trial, in the Second District Court, County of Butte.   KEYSER, J.

The facts are stated in the opinion.

*Belcher & Belcher,* for Appellants.

*Jo. Hamilton, J. M. Burt,* and *Gray & Gale,* for Respondents.

THORNTON, J.:

The plaintiffs brought this action as partners on the 29th of January, 1878, to recover from the defendant the amount purporting to be due on a promissory note for $1,000, bearing date on the 21st day of September, 1880, payable in one day after date, and on alleged indebtedness of $3,439.80, balance due on account for goods, wares, merchandise, etc.

The defendant by answer admitted the execution of the note, but denied that it was due when suit was commenced.

Defendant further pleaded that on the 17th day of November, 1877, there was due to plaintiffs a balance of account amounting to $3,424.50, the amount due on the account having been reduced to the sum above mentioned by payment made before the 17th of November, 1877; that on the day last named, the defendant on payment of this balance executed to plaintiffs his promissory note for the amount of such balance, and that this note was accepted by plaintiffs in full payment and satisfaction of the balance due on the account above mentioned. The answer of defendant further states, that afterward, on the same day, defendant at plaintiffs' request executed to them a bill of sale, of which the following is a copy:

" OROVILLE, November 18th, 1877.

This is to certify that I have this day sold to Perkins, Logan & Co. 5,257½ sacks of wheat, weighing 697,930 pounds. This wheat is stored in the warehouse of the Grangers' Union of San Joaquin Valley, at Stockton, California. This sale is subject to my indebtedness at this date to the Stockton Savings Bank, as per my note in their possession. HIRAM ECKERT.

"Witness: MILTON J. GREEN."

The answer then proceeded to state that in consideration of the execution of this bill of sale to the plaintiffs, the plaintiffs agreed to assume and pay, and did assume and pay, all of defendant's " indebtedness to the said Stockton Savings and Loan Society, as per his said note then in its possession"; that plaintiffs further agreed to consider paid and discharged all accounts and demands against defendant, especially the balance of account above mentioned and the note executed by defendant for and on account of such balance, and certain other promissory notes

then owned and held by plaintiffs against defendant, and that plaintiffs did thereupon deliver the notes to defendant.

Defendant then proceeded to set up a counter-claim for the sum of $368 for services rendered plaintiffs, and as a cross-complaint averred that on the 25th day of November, 1876, he executed to the plaintiffs a chattel mortgage on the crop of wheat, barley, and hay growing upon a parcel of land in the County of Butte, to secure the payment by defendant to plaintiffs of the sum of $7,128.65 on the 29th of May, 1877, with interest, according to the true intent and meaning of a promissory note executed by the defendant to plaintiffs, dated 29th of November, 1876, and due six months after date, for the sum above mentioned, with interest, etc., and such advances as should be made by plaintiffs to defendant during the continuance of the mortgage; that by the terms of the said mortgage the defendant agreed to carefully tend and protect these crops while growing and until fit for harvest, and then faithfully and without delay harvest, thrash, clean, and sack the same, and deliver them immediately into the possession of the plaintiffs, to be held and disposed of by them for payment of the debts secured.

There are other conditions in the mortgage which need not be stated here, as they have no bearing on the questions to be determined in the cause.

The defendant further stated that he fully performed all the covenants and conditions contained in the mortgage contract by him to be performed; that he carefully tended and harvested the crops; that he thrashed and sacked them, and delivered them into the hands of the plaintiffs, to be held and disposed of as required by the terms of the mortgage; that by reason of the negligence and carelessness of the plaintiffs, 644 sacks of the wheat delivered to them, of the value of $1,798.69, were wholly lost and destroyed, to his damage in the amount just mentioned; that on a statement of accounts between him and plaintiffs, they are indebted to him in the sum of $1,123.69, for which he asks judgment.

The plaintiffs answered the cross-complaint, in which they denied the delivery of any grain whatever to them or either of them at any time, or that defendant lost any wheat whatever by the negligence, carelessness, or any act of them or either of

them. They admit the execution of the mortgage as alleged, and aver that on the 20th of July, 1877, defendant borrowed of the Grangers' Union of San Joaquin Valley at Stockton, upon his promissory note indorsed by them, the sum of $10,000 for his own use and benefit; that to secure the payment of this indebtedness, defendant in the month of August, 1877, shipped by California and Oregon Railroad from Nelson's Station to the Grangers' Union, above mentioned, at Stockton, 5,257½ sacks of wheat; that those sacks of wheat and no more were received by the Union at Stockton, and stand at that place in the name of plaintiffs for defendant's use and benefit, and to secure the payment of the note above mentioned; that on the 15th of October, 1877, the defendant was indebted to the Union in the sum of $12,547.53 for moneys lent and advanced, interest due, and freight paid by it for his use and benefit, and to pay this indebtedness he borrowed of the Stockton Savings and Loan Society at Stockton, the same sum; that at that time the wheat above mentioned was in the store-house of the Union at Stockton, stored in the name of the plaintiffs; that to enable the plaintiff to borrow this sum, they transferred the wheat to the defendant; that to secure the payment of the sum borrowed, defendant transferred the wheat to the Loan Society above mentioned; that on the 29th of January, 1878, the Loan Society sold the wheat to pay the indebtedness of defendant above stated, and fully accounted to the defendant for all of it. They further aver that they never had in their possession, or in their name, or under their control at any time, any of the wheat referred to, save the 5,257½ sacks, which were stored at Stockton by defendant in their names; that no part of this wheat was hauled, shipped, or stored by them or either of them; that the grain was under the control and management of defendant; that defendant never shipped more than 5,257½ sacks of wheat; they deny that the indebtedness set forth in the complaint was ever paid or discharged, and aver that it is now owing to them.

On the trial the jury rendered a verdict for defendant for $963.47, on which judgment was entered. Plaintiffs moved for a new trial. The motion was denied, and this appeal is prosecuted from the judgment and order denying a new trial.

The Court, at the request of defendant, gave several instruc-

tions to the jury, which the appellants contend are erroneous. These instructions are the *first, third,* and *sixth.* The first instruction is in these words:

"The plaintiffs admit the execution of the bill of sale of the wheat, set out in defendant's answer. It purports on its face to be an absolute sale of the wheat therein described, and you should find it to be an absolute sale of the wheat, unless it has been made to appear, from a preponderance of the testimony, that it was given as security, and that both parties so understood it."

This instruction was erroneous. There was evidence on the one hand that the document referred to was an absolute sale, and on the other that it was given as security for an existing indebtedness. The fact, then, to be determined by the jury, was whether the bill of sale represented an absolute sale of the wheat or was executed as security. This issue, like all issues in civil cases, was to be determined by the jury from a preponderance of the evidence. (Code Civ. Proc. § 2061, subd. 5.) A direction to this effect would have been correct. But the last clause in the instruction in effect was a direction to the jury that whether the bill of sale was taken as security was not to be determined upon a preponderance of the evidence unless "*both parties so understood it.*" By this instruction, if the jury came to the conclusion that plaintiffs understood it to be taken as security, and the defendant did not understand it, they were directed to find it to be an absolute sale. Such instruction withdrew from the jury the full consideration of the evidence upon the issue on which they were to pass, and, in our judgment, cannot be upheld.

Instructions *third* and *sixth* are as follows:

"*Third.*—If you find from the evidence that the defendant delivered four car-loads, or six hundred and forty-four sacks, of wheat to plaintiffs, and that plaintiffs employed the railroad company to transport the same to Stockton, in San Joaquin County, and that said wheat was lost or destroyed by reason of the negligence or carelessness of said plaintiffs or their employés, then in making up your verdict you should allow to the defendant the full value of said wheat at the time it was so lost or destroyed."

"*Sixth.*—If the wheat referred to in the evidence was shipped on the railroad in the name of plaintiffs, and bills of lading taken in their name with their knowledge and consent, then they were in the possession and were the owners thereof, and liable for any loss resulting from their carelessness or negligence, or the carelessness of their agents or employés."

There was no evidence showing or tending to show that plaintiffs ever employed the railroad company to transfer the wheat, referred to in the third instruction, to Stockton. The harvesting, cleaning, sacking, handling, and shipping the wheat were left entirely to defendant, who was at that time interested in the wheat as mortgagor. The receipts of the railroad company for the wheat were taken by the defendant at or about the time it was shipped, and afterward delivered by the defendant to the plaintiffs. The plaintiffs had nothing to do with the shipping of the wheat; this was wholly attended to by the defendant. The shipments were made in the name of the plaintiffs by defendant, and very properly so, as plaintiffs were the mortgagees of the wheat; but we find no evidence that they had anything to do with the shipping and obtaining the receipts. There is nothing in the case tending to show that the plaintiffs knew that the receipts were taken in their names, until they were handed to them by the defendant, and the evidence tends to show that the wheat had reached Stockton before the receipts were handed to them. We cannot see that the evidence tends to show anything more than a constructive delivery to the plaintiffs. There was no evidence which authorized the Court to submit to the jury the question whether or not the plaintiffs employed the railroad company to transport any wheat to Stockton. Nor was there evidence tending to show any such delivery to the plaintiffs as would render them liable, as is affirmed in the instruction. The instruction was therefore erroneous. (*Mecham* v. *McKay*, 37 Cal. 154; *Conlin* v. *R. R. Co.* 36 id. 404; *People* v. *Best*, 39 id. 690; *Mendelsohn* v. *Anaheim Light Co.* 40 id. 657.)

In the *sixth* instruction, the Court affirms as law the proposition that if the wheat was shipped in the name of plaintiffs, and bills of lading taken in their name, with their knowledge and consent, that they were then in possession, and were owners of

it. On the facts embraced in the proposition, the liability of plaintiffs is deduced. But the proposition is not law, and in this the instruction is erroneous.

The judgment and order denying a new trial are reversed, and the cause remanded.

Sharpstein, J., and Myrick, J., concurred.