[Civ. No. 3010.   Second Appellate District, Division Two.—November 3, 1919.]

ANNA M. WERNER, Administratrix, etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—DEATH OF MEMBER OF SWITCHING CREW—ACTION FOR DAMAGES—EVIDENCE—FINDINGS.—In this action for damages for the death of a member of a freight switching crew of the defendant railroad company, who was killed while engaged in switching freight-cars by the method known as a running-switch or "high-ball," the jury was clearly justified in finding that the collision between the freight-cars and the engine resulted from the negligence either of the brakeman in failing to use the brake to retard the speed of the cars or the engineer in slowing down the engine as it turned on to the side-track, or both.

[2] ID.—ASSUMPTION OF RISK—INSTRUCTIONS.—In such action the jury was correctly instructed that the decedent, in assuming the ordinary risks of his employment, "only assumed the ordinary risks and dangers that might be expected by an ordinarily prudent man, without being increased or any additional hazard added thereto by reason of the negligence of the defendant or any of its employees working with him on the switch crew."

[3] ID.—DENIAL OF NONSUIT—SUBSEQUENT INTRODUCTION OF OMITTED EVIDENCE.—Where at the close of plaintiff's case the evidence on

---

2.  Assumption of risk under federal Employers' Liability Act, notes, Ann. Cas. 1915B, 481; Ann. Cas. 1917D, 922.

Applicability of state statutes and rules of law as to assumption of risk to actions under federal Employers' Liability Act, note, 12 A. L. R. 701.

a given point was so weak that a motion for nonsuit might have been well taken, but there was additional evidence from defendant's witnesses at subsequent stages of the trial tending to strengthen plaintiff's case in that particular, if, on the whole showing, the issue may be resolved in plaintiff's favor, there was no error in the denial of the motion.

[4] ID.—EVIDENCE—CONTRARY STATEMENTS—FOUNDATION FOR DISCREDITING OWN WITNESS.—Evidence may be offered to lay the foundation to show contrary statements of one's own witness for the purpose of discrediting his testimony, but is not admissible as evidence of the facts testified to.

[5] ID.—SUFFICIENCY OF FOUNDATION—INTRODUCTION OF RECORD.—In this action for damages for the death of plaintiff's intestate, the foundation for the admission of evidence impeaching or discrediting plaintiff's own witness was sufficiently shown by counsel's statement that he was taken by surprise by the testimony given by the witness on the trial, and that the former testimony as given in a purported copy of the transcript at a coroner's inquest was all that he had to rely on. The fact that this record was not afterward offered in evidence is immaterial.

[6] ID. — ACTION UNDER FEDERAL EMPLOYER'S LIABILITY ACT — CONTRIBUTORY NEGLIGENCE—REDUCTION OF DAMAGES.—In an action for damages for personal injuries for the death of plaintiff's intestate brought under the federal Employers' Liability Act of April 22, 1908, an instruction, substantially in the language of the act, directing the jury that if the decedent was guilty of contributory negligence then "such contributory negligence shall not bar a recovery herein, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee," even though erroneous, is without prejudice where the jury finds that there was no contributory negligence.

[7] ID.—RESPONSIBILITY OF EMPLOYER FOR ACTS OF EMPLOYEE.—In actions in the state courts under the federal Employers' Liability Act, those courts are bound by the rule imposing upon the employer responsibility for an injury to one employee resulting from the negligence of a fellow-employee.

[8] ID.—CAUSE OF INJURY—ACTS OF DECEDENT—INSTRUCTIONS.—In this action for damages for the death of a member of a freight switching crew killed while engaged in switching cars by the method known as a running-switch or "high-ball," the decedent himself having directed the running-switch to be made, the instruction to the jury that if they find from the evidence "that all of said acts of negligence, or any of them, have been proven and that all or either was the sole proximate cause of the accident,

---

4.  Impeachment of own witness by proof of contradictory or inconsistent statements, notes, **Ann. Cas.** 1914B, 1120; 21 **L. R. A.** 426.

then you will find for the plaintiff," would have been erroneous
had there been any evidence tending to support a finding that the
attempt to make the running-switch was in itself a negligent act
which contributed to the injury resulting in the death.

APPEAL from a judgment of the Superior Court of
Los Angeles County. Curtis D. Wilbur, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry T. Gage and W. I. Gilbert for Appellant.

E. B. Drake for Respondent.

SLOANE, J.—The defendant appeals from a verdict and
judgment against it in the sum of eight thousand five hun-
dred dollars damages for the death of plaintiff's intestate
in a railroad accident. Both defendant and the deceased
were at the time of the accident admittedly employed in in-
terstate commerce, and the action is brought under the fed-
eral Employers' Liability Act of April 22, 1908, (Act April
22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. Stats., secs. 8657–
8665; 8 Fed. Stats. Ann., 2d ed., pp. 1208, 1339]).

The decedent was run over and killed while engaged as a
member of a switching crew in the yards of the defendant
company in Stockton, California, on the night of November
2, 1915. The undisputed narrative of the facts discloses
that on the night in question the crew was switching two
freight-cars by the method known as a running-switch or
"high-ball." To effect such a running-switch as was here
attempted, the engine approached the switch, with the two
cars attached, at sufficient speed to give the cars momentum
enough to carry them past the switch upon the main line.
When near the switch the engine is slackened sufficiently to
enable the man in charge of that part of the work to un-
couple the engine from the cars. The engine then speeds
ahead and is switched to the side-track and the switch re-
placed so as to permit the cars, by their own momentum, to
run past the switch along the main line to a position beyond
the side-tracked engine. The switching crew on this occasion
consisted of the engineer and fireman—running the engine—
the man at the switch, a brakeman on top of the foremost
freight-car to regulate its speed and distance, and the de-

cedent, on the tail end of the engine, whose business it was to uncouple the cars from the engine when they were ready to make the run for the switch.  The program was carried out to the extent that Werner, the decedent, had successfully uncoupled the engine from the cars, the engine had speeded up and was turned on to the side-track, and the switch was replaced to permit the cars, approaching under their own momentum, to run forward on the main line.  Before the engine had proceeded from the main line a sufficient distance on to the side-track to clear the approaching cars, however, it was overtaken and run into by the forward car.  The decedent, who had remained on the footboard of the engine, and had jumped off just before the collision, was run over by the freight-cars and killed.

[1]  As to the cause of the accident, there is evidence tending to show that the engine was slowed down by the engineer as it turned on to the side-track, and came nearly to a stop.  The engineer stated that he did this on account of the danger in making too sudden an approach over the switch points and the curve in the side-track.  The evidence also shows that the brakeman on the front freight-car made no effort to use the brake to retard the speed of the cars.  Various witnesses testified that there was ample room between the engine and the cars at the time the engine was turned on to the side-track to have cleared the way for the freight-cars, under ordinary control.  We think the jury was clearly justified in finding the collision to have resulted from the negligence either of the brakeman or the engineer, or both.

It is true that the decedent gave the directions that the running-switch be used on this occasion, and gave the signals for uncoupling the cars and the starting ahead of the engine; but here his duties in the matter ended.  The failure of the undertaking to end safely and successfully is fairly attributable to the subsequent negligence of the engineer or the brakeman, or both, in not sufficiently accelerating the speed of the engine or retarding the speed of the freight-cars; and there is no evidence that there was negligence in making use of the flying-switch, or in the manner, time, or conditions of the signals given by the decedent, or in his remaining on the footboard of the engine.

At the close of plaintiff's case in chief the defendant moved for a nonsuit, which was denied.  This is one of the

grounds of error presented.  [2]  The grounds of the motion were that the decedent was familiar with the railroad yards and was an experienced railroad man; that he directed the movement of the engine in connecting the cars, directed the movement of the engine in starting the cars, drew the pin which uncoupled the cars from the engine, and had complete knowledge of the move that was to be made by the engine and cars, and therefore assumed the ordinary risks and dangers which were attendant on the movement in question.  He did not, however, know—and it does not appear that he had reason to anticipate—that his fellow-workmen would not co-operate in co-ordinating their subsequent movements in the usual manner and with the usual skill and prudence.  As the jury was subsequently, and we think correctly, instructed, in assuming the ordinary risks of his employment, the decedent "only assumed the ordinary risks and dangers that might be expected by an ordinarily prudent man, without being increased or any additional hazard added thereto by reason of the negligence of the defendant or any of its employees working with him on the switch crew."  It is further objected on this motion that there is a failure of proof upon the part of plaintiff to show that the deceased met his death in substantially the manner described in the complaint.  On this question the evidence is meager as to just how and why the decedent jumped from the footboard of the switch engine in front of the moving cars; but the testimony discloses that the freight-cars struck the engine just about where he had been standing, and as there appears to be no motive for his jumping off on to the track directly in front of the approaching cars, other than in an effort to escape the impending collision, we think the matter was properly left to the jury.  [3]  There was additional evidence from defendant's witnesses at subsequent stages of the trial tending to strengthen plaintiff's case in the particulars covered by the motion for nonsuit; and if, on the whole showing, the issue may be resolved in plaintiff's favor, there is no error in the denial of the motion, even though originally well taken.  (*Peters v. Southern Pacific Co.*, 160 Cal. 48, [116 Pac. 400].)

[4]  Appellant takes exception to certain rulings of the court in admitting evidence over its objection.  The witness Goedart, a member of the switching crew at the time of the accident, called by the plaintiff, was asked by plaintiff's

counsel on direct examination if he had not at the coroner's inquest over this matter answered certain questions as to the distance between the cars and the engine at the precise time the engine was turned on to the side-track, and as to the speed at which the cars were approaching, in a certain manner, different and more favorable to the plaintiff than answers given to similar questions on the trial. The witness was shown what purported to be a copy of the transcript of the evidence taken at such inquest, and asked if the questions indicated were so asked and answered as shown. A single question and answer will suffice for illustration: ''Q. Didn't you state under oath on November 3, 1915, at Stockton, California, while under oath at the time of the coroner's inquest—weren't the following questions asked you and the following answers given: 'At what speed were they going? A. I should judge about thirteen and fifteen miles an hour.' '' The question was objected to by defendant as leading and suggestive, and as being an attempt to impeach plaintiff's own witness, and improper direct examination. The objection to this and other similar questions was by the court overruled. The questions were mostly answered in the negative, or by the statement of the witness that he did not remember. The jury, moreover, was properly instructed by the court that the evidence offered was only admissible to lay the foundation to show contrary statements of the witness for the purpose of discrediting his testimony on the trial, and could not be considered as evidence of the facts testified to. There was no subsequent offer of the record of the inquest to show what was actually testified to on that occasion.

[5] We think the rulings of the court were without error, under the authority of section 2049 of the Code of Civil Procedure, and that the foundation for such impeaching or discrediting evidence was sufficiently shown to comply with the rule laid down in *Zipperlin* v. *Southern Pacific Co.*, 7 Cal. App. 206, [93 Pac. 1049]. Counsel for plaintiff stated that he was taken by surprise by the testimony given by this witness on the trial, and that the former testimony as given in the purported copy of the transcript at the coroner's inquest was all that he had to rely on. This showing was before the court and was accepted as a foundation for the impeaching testimony, and justified its admission in evi-

dence for that purpose. The fact that this record was not afterward offered in evidence is immaterial. There was no obligation resting on the plaintiff to follow the matter up. As to the objection that the questions were leading, this was largely a matter within the discretion of the court, and a state of facts which would justify the party in discrediting his own witness by showing that he had made contradictory statements would usually justify the exercise of such discretion in permitting leading questions.

[6] Exception is also taken to the court's instruction to the jury on the question of proportionate reduction of damages in case of contributory negligence. The instruction substantially followed the language of the federal Employers' Liability Act, in directing the jury that if the decedent was guilty of contributory negligence, then "such contributory negligence shall not bar a recovery herein, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." But even conceding error in the instruction, it would be without prejudice to the appellant in view of the special issue submitted to the jury on which it was found that there was no contributory negligence. If this finding is justified by the evidence, as we have already indicated that in our opinion it was, it becomes entirely immaterial what admeasurement of damages was prescribed for a condition where contributory negligence might exist.

[7] The instructions covering the fellow-servant negligence question were in harmony with the doctrine of the federal Employers' Liability Act, which establishes the right of recovery for injuries to an employee "resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier." This language is construed in the *Second Employers' Liability Cases,* 223 U. S. 1, [38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169, see, also, Rose's U. S. Notes], as a modification of the common law relating to negligence of fellow-servants as adopted by the code provisions in California and many other states. In this connection Mr. Justice Van Devanter, speaking for the court in the cases above cited, says: "Briefly stated, the departures from the common law made by the portions of the act against which the first objection is leveled are these: (2) The rule that the negligence of one employee resulting

in injury to another was not attributable to their common employer is displaced by a rule imposing upon the employer responsibility for such an injury, as was done by the common law when the injured person was not an employee. . . . '' And in actions in the state courts under the federal Employers' Liability Act, the state courts are bound by this rule.

[8] There might be sufficient ground for appellant's exception to the verdict under the instructions covered by exception No. 31 if there was any evidence before the jury tending to show that there was negligence in attempting the running-switch on this occasion. In the instruction covering this point the court enumerates, among other grounds of negligence set forth in the complaint, the alleged negligence in "attempting to at all make the said high-ball or running-switch," and charges the jury that if they find from the evidence "that all of said acts of negligence, *or any one of them,* have been proven, and that all or *either* was the sole proximate cause of the accident, then you will find for the plaintiff." Had there been any evidence tending to support a finding that the attempt to make this running-switch was in itself a negligent act which contributed to the injury, the instruction would be erroneous, for the reason that it appears without dispute that the decedent himself directed this running-switch to be made. But we think the evidence shows without controversy that this method of switching cars was in common use, and recognized generally by train men as a safe and proper method. Under this state of the evidence it cannot be assumed that the jury predicated its verdict upon negligence in resorting to this mode of switching cars.

We think rulings complained of on other instructions were without prejudicial error.

Judgment affirmed.

Finlayson, P. J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 2, 1920.

All the Justices concurred, except Wilbur, J., who did not participate.