[Civ. No. 4213. Second Appellate District, Division Two.—July 27, 1925.]

O. M. GREGG, Respondent, v. T. J. McDONALD, Appellant.

[1] CONTRACTS—PURCHASE OF INTEREST IN BUSINESS—OPTION TO SELL —CONSTRUCTION OF WRITING.—Where two parties enter into a written agreement, in connection with a bowling-alley and pool-room business, which contains clauses stating that "it is desired that second party shall be employed . . . with the view also to his buying an interest in said business and ultimately becoming a partner therein; . . . it is agreed . . . that said second party . . . shall purchase a one-third interest; . . . it is . . . agreed . . . that this agreement shall . . . constitute . . . merely . . . a contract covering the conditions of employment . . . and for the purchase by said second party from said first party of said one-third interest in said business," such agreement does not give the first party

only an optional right to sell the one-third interest to the second party.

[2] ID.—IMPLIED OBLIGATIONS.—The obligation of a party need not be expressly stated in the contract but may be inferred from the undertakings of the other party; thus, where one party agrees to buy from the other and nothing is expressly said as to the obligation of the latter to sell, such obligation to sell may be implied.

[3] ID.—REPUDIATION OF CONTRACT—TENDER OF PERFORMANCE.—The agreement between plaintiff and defendant having provided that plaintiff "shall purchase a one-third interest in said business within five years from the date hereof," plaintiff could make payment of the full amount of the purchase price at any time within five years, and thereupon he would become entitled to a transfer of the one-third interest to him; and where defendant repudiated his contract and gave plaintiff notice that he would carry it out, and did not retract such repudiation before plaintiff commenced his action, plaintiff, not being in default, was not required to tender performance on his part before suing for breach of the contract.

[4] ID. — DISCHARGE OF PLAINTIFF — BREACH OF ENTIRE CONTRACT — TENDER OF PAYMENT.—Under said contract, the agreement for the employment of plaintiff and for the sale to him of an interest in the business having been intimately blended and related to each other, the discharge of plaintiff and the notice to him that defendant would not perform his part of the contract constituted a breach of the entire contract, and plaintiff's cause of action arose immediately, without reference to any tender of payment.

[5] ID.—DISCHARGE OF PLAINTIFF—SUBSEQUENT OFFER TO WORK.—Plaintiff having been ready and willing to continue in defendant's employ as required by the contract, as manager of the business, at the time of his discharge, it was not incumbent upon plaintiff, after his discharge, to present himself to defendant and offer to go on with his employment.

[6] ID.—EMPLOYMENT IN GIVEN CAPACITY—DISCHARGE FROM POSITION. Where plaintiff was employed as manager of the business in question, and not in any other capacity, his discharge from that position was a wrongful discharge from his employment.

[7] ID. — TERM OF EMPLOYMENT — CONSTRUCTION OF CONTRACT. — The contract for the employment of plaintiff and for the purchase by him of an interest in the business having given him five years, if he chose to take it, within which to make his payment for the interest in the business, and the contract having further provided that, in addition to a specified monthly salary which plaintiff was to retain, he was to receive for his services a given percentage of

2.  See 6 Cal. Jur. 318; 6 R. C. L. 856.

the net profits of the business, if any there were, to be computed monthly if possible and applied on the purchase price of the interest in the business, a necessary implication from the contract was that he should have the right to continue in defendant's employ during the full term of five years, earning said given percentage to be applied upon his contract of purchase, unless he should elect sooner to pay the purchase price for the interest which he had agreed to buy.

[8] ID.—WRONGFUL DISCHARGE—MEASURE OF DAMAGES—OTHER EMPLOYMENT—BURDEN OF PROOF.—The measure of recovery by a wrongfully discharged employee is generally and primarily the agreed wage for the unexpired part of the term; and the burden is upon the employer to rebut this presumption of proof by proof that the damages sustained were actually loss; and if the employer contends, in mitigation of damages, that the employee was actually engaged in other profitable service during the term, or that such employment was offered to him and rejected, or that by the exercise of reasonable diligence he could have found such employment, the burden is upon him to show it; and the "other employment" that a discharged employee is bound to seek is employment of a character substantially similar to that of which he has been deprived, and he need not enter upon a service of a more menial kind.

[9] ID.—IRRELEVANT INSTRUCTIONS—REVERSIBLE ERROR.—Such instructions only should be given as are based upon legitimate evidence in the case, and if an irrelevant instruction be given, and it is unobjectionable as an abstract proposition of law, the giving of it is a mere technical, but not a reversible error, if it is not calculated to mislead the jury; if, however, it is calculated to mislead the jury and to affect their conclusion upon the issue submitted to them, it is prejudicial and reversible error.

[10] ID.—BREACH—ACTION FOR DAMAGES—EVIDENCE—VERDICT—PREJUDICIAL INSTRUCTIONS.—In this action for damages for breach of a contract for the employment of plaintiff as manager of a bowling-alley and pool-room business and for the sale to him of a one-third interest in said business, it was prejudicial and reversible error to instruct the jury that loss of opportunity to purchase the interest in the business was "an element of damage," to be considered by them in arriving at their verdict, and that if plaintiff was wrongfully discharged he was entitled to the entire salary for the full five years, less previous payments, as a "part" of his damages, in view of the facts that there was no evidence showing, or tending to show, that any profits ever had been, or ever would be, earned

---

8.   See 16 Cal. Jur. 984; 18 R. C. L. 523.
9.   See 24 Cal. Jur. 830; 14 R. C. L. 786.

in the business, or that said one-third interest ever had, or ever would have, any value, and the verdict of the jury was not for the precise amount of plaintiff's agreed salary for the balance of the term after deducting the previous payments, but for a lesser amount.

[11] ID.—PREJUDICIAL INSTRUCTIONS—APPEAL.—The appellate court cannot assume that the jurors wilfully disregarded their sworn duty to consider all instructions given to them by the trial court; and when it is clear that an instruction was calculated to mislead the jurors, and that in all likelihood it affected their conclusion as to the amount of the verdict, prejudicially to the appellant, the giving of it constitutes error equally as grave as would be the giving of instructions fundamentally wrong.

---

(1) 30 Cyc., p. 359, n. 57.   (2) 13 C. J., p. 334, n. 37, 41, p. 558, n. 24.   (3) 39 C. J., p. 98, n. 3 New.   (4) 39 C. J., p. 92, n. 16 New.   (5) 39 C. J., p. 91, n. 12, 13.   (6) 39 C. J., p. 41, n. 6.   (7) 39 C. J., p. 44, n. 38.   (8) 4 C. J., p. 1031, n. 31, 32; 39 C. J., p. 102, n. 69, p. 109, n. 40, p. 115, n. 12, p. 117, n. 26, 27; 38 Cyc., p. 1618, n. 36.   (9) 38 Cyc., p. 1621, n. 44, p. 1622, n. 45, 46.   (10) 38 Cyc., p. 1603, n. 59.   (11) 4 C. J., p. 772, n. 82.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Reversed.

The facts are stated in the opinion of the court.

George J. Denis and George W. McDill for Appellant.

A. J. Bledsoe for Respondent.

FINLAYSON, P. J.—This is an action for damages and also for accrued wages sought to be recovered by reason of an alleged breach of contract. The action was tried before a jury, a verdict for plaintiff in the sum of $5,000 was returned and judgment entered accordingly. From that judgment the defendant appeals.

On July 30, 1920, at the city of Los Angeles, defendant, as the party of the first part, and plaintiff, as the party of the second part, executed a written contract as follows: "This agreement made this 30th day of July, 1920, by and between T. J. McDonald, party of the first part, and O. M. Gregg, party of the second part, witnesseth: Whereas said

---

11. See 2 Cal. Jur. 1028.

first party is about to engage in the bowling-alley and pool-room business in a building to be erected for said first party for said purpose at 828 South Olive Street, in the city of Los Angeles, and it is desired that second party shall be employed by said first party in the conducting and management of said business with the view also to his buying an interest in said business and ultimately becoming a partner therein; Now, therefore, it is hereby agreed that if said building is built and if said first party shall secure a lease of same and shall establish said business so contemplated as aforesaid that said second party shall enter into the employ of said first party in said business and that he shall purchase a one-third interest in said business within five years from date hereof, at the actual cost of installing and equipping said business, to wit, at a purchase price of one-third of the actual cost of installing bowling-alleys, pool-tables, racks and other equipment and furniture used in said business and the other expenses of installing said business, it being contemplated that said first party shall receive from said second party for said one-third interest a total sum sufficient to cover one-third of the total amount invested by said first party in said business. It is agreed that said second party shall give all of his time and attention to the conduct of said business and shall receive a salary of one hundred seventy-five dollars ($175.00) per month and shall further be allowed three per cent of the net profits of said business, computed monthly if possible, which three per cent shall not be paid to said second party, but shall be turned over to said first party when ascertained and shall be credited by him upon the purchase price of said one-third interest in said business. It is understood and agreed that said business shall be carried on in the name of said first party and that this agreement shall not be deemed to constitute a partnership between the parties hereto but merely as a contract covering the conditions of employment of said second party by said first party and for the purchase by second party from said first party of said one-third interest in said business. In witness whereof the parties have hereunto set their hands the day and year first above written. T. J. McDonald, Ona M. Gregg."

It will be noticed that the contract is of a dual character—that it bears two aspects. In one aspect it is a contract of

employment; in the other it is a contract to purchase an interest in the business. These two features are so intimately blended and related to each other that the breach of one necessarily involves a breach of the other, though the measure of damages for a breach of one is not the same as that which is applicable to a breach of the other.

About September 1, 1920, plaintiff entered upon the performance of his duties as manager of the pool-room business under the terms of his contract. By a supplemental agreement in writing, bearing date January 17, 1921, the contract of July 30, 1920, was modified in certain particulars. By this supplemental contract the parties agreed that plaintiff's salary should be $150 per month instead of $175, as provided for in the original contract, and that he should be credited with four per cent of the net profits of the business instead of three per cent, as originally agreed.

The complaint is in two counts: One for damages for the alleged breach of the contract by reason of the wrongful discharge of plaintiff, and the other for accrued wages due under the contract and remaining unpaid. In the first count plaintiff alleged that on March 16, 1921, he was wrongfully discharged by defendant from the latter's employ; that ever since his discharge defendant has refused to ascertain his four per cent of the net profits or to give him credit therefor on the purchase price of the one-third interest in the business; that at all times since March 1, 1921, the business has been operating at a profit; that under plaintiff's management the business would have earned a profit of $100,000 at the end of the term of five years, and that his four per cent thereof would amount to $4,000; that the cost of installing the bowling-alleys, pool-tables, racks and other equipment and furniture was $50,000; that during the five years for which he was to be employed the value of the equipment and business would have increased, and that it would have amounted to $100,000 at the end of the term; that the lease of the building in which the business is conducted runs for a term of fifteen years from August, 1920, and is constantly increasing in value; that by reason of the premises he has been damaged in the sum of $20,000. In the second count plaintiff alleges the contract of employment, his discharge and that there is due him and unpaid the sum of $975 for salary earned prior to his discharge. Issue having

73 Cal. App.—48

been joined upon many of the material allegations of the complaint, the cause was tried before the jury, resulting in a verdict and judgment for plaintiff, as already stated.

Since the judgment must be reversed and a new trial ordered on account of the prejudicial error later to be considered, we shall consider such of appellant's points as are likely to arise on a retrial.

[1] We do not agree with appellant that the contract gave him only an optional right to sell the one-third interest to respondent. We think that under the terms of the contract the parties were mutually obligated—the one to buy and the other to sell. The instrument contains these significant and pregnant clauses: ". . . it is desired that second party [respondent] shall be employed . . . with the view also to his buying an interest in said business and ultimately becoming a partner therein"; " . . . it is agreed . . . that said second party . . . shall purchase a one-third interest"; " . . . it is . . . agreed . . . that this agreement shall . . . constitute . . . merely . . . a contract covering the conditions of employment . . . and for the purchase by said second party from said first party of said one-third interest in said business." There can be little doubt that when the parties expressly stated in their writing that their agreement should constitute a "contract . . . for the purchase by said second party . . . of said one-third interest," they understood that appellant was just as much obligated to sell as respondent was to buy. [2] It is uniformly held that the obligation of a party need not be expressly stated in the contract but may be inferred from the undertakings of the other party. Thus it has been held that where one party agrees to buy from the other and nothing is expressly said as to the obligation of the latter to sell, such obligation to sell may be implied. (*Thomas-Huycke-Martin Co.* v. *Gray,* 94 Ark. 9 [140 Am. St. Rep. 93, 125 S. W. 659].)

[3] It was not necessary for respondent to allege or prove that he had paid or tendered to appellant the agreed purchase price for the one-third interest. This is not the case of a breach of contract by the seller before the arrival of a fixed time for performance by him. It was not agreed that appellant's obligation to sell should accrue at the end of the five years. The language of the agreement is that respondent "shall purchase a one-third interest in said

business *within* five years from date hereof.'' This left in-
definite the time for payment by respondent, and it left
equally indefinite the time for the transfer of the one-third
interest by appellant. The law implies that payment was to
be made upon the transfer of the one-third interest to
respondent. (Civ. Code, sec. 1784; *Blackwood* v. *Cutting
Packing Co.,* 76 Cal. 215 [9 Am. St. Rep. 199, 18 Pac. 248].)
Respondent could make payment of the full amount of the
purchase price at any time within the five years, and there-
upon he would become entitled to a transfer of the one-
third interest to him. In such cases, if the seller repudiates
his contract and gives the buyer notice that he will not carry
it out, and does not retract his repudiation before the action
is commenced, the buyer, not being in default, is not re-
quired to tender performance on his part before suing for
breach of the contract. (Civ. Code, sec. 1440; *Stum* v.
*Hadrich,* 7 Cal. App. 241 [94 Pac. 82].) [4] Not only
was respondent not required to tender performance after
his discharge and after he was notified by appellant that
the latter would not perform his part of the contract, but
such discharge and notice constituted a breach of the entire
contract, and respondent's cause of action arose immediately,
without reference to any tender of payment. (*Stum* v.
*Hadrich, supra.*)

[5] Nor was it incumbent upon respondent, after his
discharge, to present himself to appellant and offer to go on
with his employment. It is enough that he was ready
and willing to continue in appellant's employ, as manager
of the business, at the time of his discharge. (*Howard* v.
*Daly,* 61 N. Y. 362 [19 Am. Rep. 285]; *Stumer* v. *Wilson,*
82 Ill. App. 384.) The case of *Winsor* v. *Silica Brick Co.,*
31 Cal. App. 85 [159 Pac. 877], cited by appellant, is not
in point. In that case the letter to the employee announc-
ing his release from the contract did not involve a clear
and unequivocal discharge. Here appellant incontinently
discharged respondent and refused to permit him to continue
in his employ as manager of the business. An offer by the
employee to proceed with the performance of his contract of
employment after his employer has unconditionally and per-
emptorily discharged him and has refused to permit him to
continue to perform the duties for which he was employed
would, as was said in *Winsor* v. *Silica Brick Co., supra,* be

"a useless and futile act." Such dismissal is of itself a sufficient prevention of performance of the contract to entitle the employee to bring his action for its breach.

[6] Respondent was employed as manager of the business, and not in any other capacity. His discharge from that position was, therefore, a wrongful discharge from his employment. The written contract not only contains the recital that "it is desired" that respondent shall be employed "in the conducting and *management* of said business," but it is expressly agreed that he "shall give all of his time and attention to the conduct *of said business*"— not to the conduct of a minor department of the business. The whole tenor of the contract leads irresistibly to the conclusion that both parties understood that respondent was to be employed as manager of the business, and not in some other role. Indeed, the parties themselves put this construction upon their writing. This is indicated by the fact that respondent took charge of the business as its manager with appellant's acquiescence, and continued in that capacity until he was wrongfully discharged some six and a half months later.

[7] Appellant had not the right to discharge respondent before the expiration of the five years mentioned in the contract. By the terms of their agreement respondent was given all of the five years, if he chose to take it, within which to make his payment for the one-third interest. That is to say, it was optional with him to pay the whole of the purchase price for the one-third interest before or at the end of the five years. If he chose to wait until the end of that period before making full payment, he would be entitled to remain in appellant's employ as manager of the business for the full term mentioned in their agreement. This is the necessary result of that provision of the contract which contemplates that a part at least of the purchase price shall be deducted from respondent's salary. That is to say, in addition to the $150 per month, which amount he was to retain, respondent was to receive for his services a further monthly sum equal to four per cent of the net profits of the business, if any there were. This percentage of the profits, computed monthly if possible, was to be applied by appellant upon the price to be paid by respondent for the one-third interest. Since respondent was to have all of the

five years, if he wanted that length of time, within which to pay for the one-third interest, it follows that the contract, considered in its entirety, clearly implies that he should have the right to continue in appellant's employ during the full term of five years, earning the four per cent to be applied upon his contract of purchase, unless he should elect sooner to pay the purchase price for the interest which he had agreed to buy.

[8] It was shown that respondent had been earning $100 per month immediately prior to his entry into appellant's service. Wherefore it is suggested that his earning capacity equals that amount, and that, therefore, the damages sustained by him as a discharged employee could not exceed $50 per month for the unexpired balance of the five-year term. But there was no evidence that respondent was actually engaged in profitable employment at any time during the balance of the term subsequent to his discharge, or that he had been offered and had declined other employment of a character substantially similar to that of which he had been deprived, or that he could have obtained such employment by the exercise of reasonable diligence. The measure of recovery by a wrongfully discharged employee is generally and primarily—or "*prima facie*," as many cases put it—the agreed wage for the unexpired part of the term; and the burden is upon the employer to rebut this presumption by proof that the damages sustained were actually less. If, for example, the employer contends, in mitigation of damages, that the employee was actually engaged in other profitable service during the term, or that such employment was offered to him and rejected, or that by the exercise of reasonable diligence he could have found such employment, the burden is upon him to show it. (8 Cal. Jur. 896; 18 R. C. L. 523.) "The 'other employment' that the discharged employee is bound to seek is employment of a character substantially similar to that of which he has been deprived; he need not enter upon service of a more menial kind." (18 R. C. L., p. 529.)

The trial court gave an instruction which was not warranted by the evidence. We agree with appellant that it was calculated to mislead the jurors and to affect their conclusion on the amount of damages to be awarded by them. We are satisfied, therefore, that the giving of it was preju-

dicial error necessitating a reversal of the judgment. [9] The rule deducible from the authorities is this: Such instructions only should be given as are based upon legitimate evidence in the case; if an irrelevant instruction be given, and if it is unobjectionable as an abstract proposition of law, the giving of it is a mere technical, but not a reversible error, if it is not calculated to mislead the jury; if, however, it is calculated to mislead the jury and to affect their conclusion upon the issue submitted to them, it is prejudicial and reversible error. (*Coughlin* v. *People,* 18 Ill. 266 [68 Am. Dec. 541]; *Mendelsohn* v. *Anaheim Lighter Co.,* 40 Cal. 657; *Perkins* v. *Eckert,* 55 Cal. 400; *People* v. *Roe,* 189 Cal. 559 [209 Pac. 560].)

[10] The instruction in question (we italicize the parts of which complaint is made) reads: "If you believe from the evidence, ladies and gentlemen of the jury, that the contract alleged in the complaint was made by the plaintiff and defendant, and that plaintiff entered upon the discharge of the duties of manager of defendant's business under the terms of the contract, and that defendant thereafter discharged plaintiff without cause, and has ever since refused to allow plaintiff to perform the employment which he contracted to perform, then I instruct you that defendant is liable in damages for any loss suffered by the plaintiff as the natural result of such breach of contract, and which was within the reasonable contemplation of plaintiff and defendant in entering into the contract. *If you find from the evidence that the defendant by breach of his agreement deprived the plaintiff of all opportunity to acquire a one-third interest in defendant's business described in the complaint, this is an element of damage to be considered by you in arriving at your verdict.* Also, you may consider whether the evidence shows that plaintiff, at the instance of defendant, and for the purpose of enabling plaintiff to enter upon the duties specified in the contract in question, did leave and surrender an established business, or avocation, and thus sustained damage to himself. With reference to the salary of the plaintiff as manager, specified in the contract alleged in the complaint, I instruct you, if you believe from the evidence that the contract alleged in the complaint was entered into between plaintiff and defendant, and that thereafter plaintiff entered upon the duties of manager of defendant's

business in pursuance of the terms of said contract, and that defendant in the month of May, 1921, discharged plaintiff from the said employment as manager, without cause, and in violation of the terms of said contract, the plaintiff is entitled, *as a part of his damages,* to the entire salary provided by the contract for the full five-year term, commencing with the date of his employment. From the amount of his salary for the full term, if the jury finds for the plaintiff, the jury must deduct any sum which plaintiff has already been paid thereon by defendant.''

There was no evidence showing, or tending to show, that any profits ever had been or ever would be earned in the business. There was no evidence showing, or tending to show, that the one-third interest which appellant was to transfer to respondent had, or ever would have, any value whatever. Indeed, for aught that appears to the contrary, that interest, if purchased by respondent, may have proved to be a liability instead of an asset.

If the jury had returned a verdict on the first count for an amount exactly equal to the stipulated salary for the unexpired term of employment, less the amount already paid by appellant, it is possible that we then could have said that the irrelevant part of the instruction had not affected the result. Had that been the precise amount of the verdict it may be that we could have said that the jurors had ignored the part of the charge advising them to consider as ''an element of damage'' respondent's opportunity to acquire the one-third interest. But be that as it may, the jury returned a verdict for an amount which is less than respondent's agreed salary for the balance of the term after deducting the previous payments. We can conceive of no explanation to account for the amount arrived at by the jurors save upon the theory that they possibly took notice of local business conditions and concluded therefrom that respondent, by the exercise of reasonable diligence, could have found other similar employment long before the expiration of the balance of the five-year term, which still had more than four years to run. At any rate, having returned a verdict for a sum considerably less than the amount of the agreed wage for the balance of the term minus the previous payments, we have no means of knowing how much the jurors allowed respondent for loss of the stipulated amount of salary and

how much they may have undertaken to allow him for the loss of his opportunity to purchase the one-third interest in the business. We are bound to assume that they allowed him some amount for the loss of his opportunity to purchase an interest in the business, notwithstanding the utter absence of evidence to show that it was of any value, for not only were they distinctly told that loss of opportunity to purchase the interest "is an element of *damage*," but they were also told that it is an element of damage "to be considered by you in arriving at your verdict." And later on in the instruction they were told that if respondent was wrongfully discharged he was entitled to the entire salary for the full five years, less previous payments, "as a *part* of his damages." This language necessarily must have created the inference that respondent was entitled to substantial damages for the loss of his opportunity to purchase the one-third interest as well as damages suffered by him as a discharged employee. There is no escaping the conclusion that the part of the instruction of which complaint is made, though not based upon any evidence in the case, necessarily must have augmented the verdict to some extent if the jurors considered it, as they were told they must. **[11]** We cannot assume that they wilfully disregarded their sworn duty to consider all instructions given them by the court. When it is clear—as it seems to us in the instant case—that the instruction was calculated to mislead the jurors, and that in all likelihood it affected their conclusion as to the amount of the verdict, prejudicially to the appellant, the giving of it "constitutes error equally as grave as would be the giving of instructions fundamentally wrong." (*People v. Roe, supra.*)

The judgment is reversed.

Works, J., concurred.

CRAIG, J., Dissenting.—I dissent. To my mind the giving of the instruction which my associates consider of a prejudicially erroneous character is not a sufficient ground for reversal. It is doubtful whether or not the instruction in question is a correct statement of the law, but if it is conceded, without admitting the legal correctness of the concession, that the instruction was erroneous, there is nothing

to indicate that the error prejudiced the appellant, and therefore the judgment should be sustained.

The verdict is general in its character. Evidence contained in the record conclusively supports a recovery for the plaintiff and respondent, based upon loss of former employment, as well as loss of salary under the contract. No evidence whatever was introduced to sustain the allegation of the complaint referred to by the instruction in question and having to do with the loss of opportunity to purchase an interest in the business. This in itself furnishes strong reason to believe that the jury based its verdict upon the former rather than the latter ground. Aside from this indication there is nothing upon which even an intelligent guess might be hazarded to say for which element of damages pleaded in the complaint the award was made. Under these circumstances a conclusion that the appellant was prejudiced must be predicated upon a presumption that the jury acted so unjustly as to return a substantial verdict against the defendant without the slightest proof that as to the ground upon which it was based he had done more than commit a technical wrong, for which the plaintiff had suffered no loss. Further, it would be necessary for us to presume that the jury disregarded the court's instructions upon other phases of the case in which damages in an amount greater than the sum allowed were clearly proven. I apprehend that it is not the province or the practice of appellate courts to indulge in these presumptions, which at once reflect upon the integrity of juries and impugn their intelligence. Rather, I think the law as well as experience and reason require that contrary presumptions be recognized, and in the absence of proof be given the weight to which they are usually entitled. In the instant case we should therefore presume that the jury took into consideration the only grounds supported by any evidence upon which the plaintiff was entitled to recover, and that the jury based its verdict upon the only grounds for which a verdict could reasonably have been rendered for the plaintiff.

This procedure is supported by numerous decisions from every jurisdiction, so far as I have been able to ascertain, where the issue here involved has been passed upon. The following are a few of the cases which might be cited: *Werner*

v. *Southern Pacific Co.*, 44 Cal. App. 76 [185 Pac. 1016];
*Flinn* v. *Crooks*, 2 Cal. App. 335 [83 Pac. 812]; *Blizzard* v.
*Applegate*, 77 Ind. 516; *Bourland* v. *Baker*, 141 Ark. 280
[20 A. L. R. 525, 216 S. W. 707]; *Valente* v. *Porto*, 98
Conn. 653 [119 Atl. 888].

In *Flinn* v. *Crooks, supra,* the complaint consisted of two
counts; the first, one for the reasonable value of an at-
torney's services, and the second was based upon an al-
leged express contract. No evidence was introduced in
support of the second count, but a motion for nonsuit as
to that count was erroneously denied. A general verdict
for the plaintiff was returned. It was held that as there
was no evidence introduced in support of the second count,
and the evidence did justify a verdict upon the first count,
it would be presumed for the sake of upholding the verdict
and the judgment that they were based upon the first
count.

*Sanders* v. *Reister*, 1 Dak. 151 [46 N. W. 685], involved
an instruction that the jury consider *inter alia* the
pecuniary loss, if any proven. Of this there was no evi-
dence. It was said, "The record does not disclose that there
was any evidence introduced even tending to prove pecu-
niary loss, and we are not to presume the jury found what
was not in evidence." *Werner* v. *Southern Pacific Co.,*
*supra,* applied the same rule to an instruction that the
jury could find for the plaintiff if it was negligence for the
railroad company to make a running switch, the running
switch having been directed by plaintiff's decedent. It was
there said: "There might be sufficient ground for appel-
lant's exception to the verdict under the instructions cov-
ered by exception No. 31 *if there was any evidence before
the jury* tending to show that there was negligence in at-
tempting the running switch on this occasion. . . . Under
this state of the evidence it cannot be assumed that the jury
predicated its verdict upon negligence in resorting to
this mode of switching cars." (Italics ours.)

In *Blizzard* v. *Applegate*, 77 Ind. 516, suit was brought
upon two counts, the first on a promissory note, and the
second on account of the services as an attorney and for
moneys expended. The supreme court of Indiana, by an
itemized statement set out in its opinion, illustrated how
the jury *could* have found its $600 verdict, saying: "The

appellant assumes that the jury did not allow the appellee anything on the note, and earnestly insists that the evidence does not sustain the verdict on the second paragraph. The verdict was general; we are therefore unable to determine whether or not the jury included the amount apparently due upon the note in the verdict; but there was evidence upon which they could have found for the plaintiff upon the issues under the first paragraph of the complaint; and, if necessary to sustain the verdict, we must presume that they did so, the record showing nothing to the contrary."

In *Bourland* v. *Baker, supra,* it was said: "The instruction is assailed because, according to appellant's interpretation thereof, it submitted all the allegations of negligence set up in the complaint to the jury for consideration, whether supported by evidence or not. It is true evidence was not introduced in support of every allegation of negligence in the complaint. The trend of the evidence, however, limited the issues to whether the injury resulted from fast driving, failure to give a signal of warning, failure to keep a proper lookout, or whether due to appellee's own negligence; and, in the absence of specific objections to the general terms in which the allegations of negligence were submitted, it will be presumed that the jury considered *only such grounds of negligence as were supported by the evidence.*"     (Italics supplied.)

But we need not rely upon the decisions of courts of this and other jurisdictions. In this state we have express legislative authority on the matter which appears to me to compel the affirmance of the judgment appealed from. Section 475 of the Code of Civil Procedure provides that: "No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect were prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable in such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown."

To the same effect in section 4½ of acticle VI of our constitution.

It must be remembered that the verdict rendered was a general one. There is not the slightest suggestion of evidence in the record on appeal which would indicate that the jury awarded their verdict upon the cause of action for loss of opportunity to purchase an interest in the business. Nor is there any evidence to show that respondent was damaged one cent by reason of being deprived of his opportunity to purchase the one-third interest in the business. Under the authorities above cited, to justify a reversal appellant must not only show that an erroneous instruction has been given, but that the error committed was prejudicial, that by reason of such instruction the party appealing sustained and suffered substantial injury, and also that a different result would have been probable if such instruction had not been given. In the face of the fact that the verdict rendered was fully warranted by evidence sustaining the allegations of loss of other employment and of salary, and that there was none to support the claim of substantial damage by reason of appellant having been prevented from securing an interest in the business, can it be said that if error had not been committed a different verdict would have been rendered? I think not. And, lest an appellate court might consider, as was formerly done, that in the absence of proof either way, prejudice and damage is to be presumed from error, the legislature in enacting this section of the code has closed the door against entertaining such argument or applying that presumption.

It has been uniformly held that if a judgment or order is right upon any theory of law applicable to the case it must be sustained regardless of the consideration which may have moved the trial court to its conclusion. The ruling may have been correct, but the reasoning or instruction of the trial court erroneous. An appellate court cannot know the minds of the jury nor adjudge that they were guilty of perpetrating an injustice without evidence or reason therefor, merely because under an instruction given by the court it may have been possible for them to do so. In cases similar to that before us, where the jury has rendered a general verdict and there is satisfactory evidence to establish other elements of damage alleged in the com-

plaint, it has been held that it will be presumed that the jury rendered its verdict in favor of the plaintiff for the injuries which the evidence sustained, and not to compensate for that which was alleged but not proven.

From these cases, as well as the code and constitution, the conclusion is inevitable that if there was error it was not of such a character as to require or allow a reversal.